[Anniston Electric & Gas Co. v. Rosen.]

# Anniston Electric & Gas Co. *v*. Rosen.

## *Damages for Injury to Person on Track.*

(Decided Feb. 4, 1909.  48 South. 798.)

1. *Street Railroads; Use of Street.*—Travelers in public streets and street cars operated therein have equal rights, and in the exercise of the common right by each, the streets must be so used as not to unreasonably hinder or endanger either.

2. *Same; Care Required of Operator.*—While the operator of a street car in a public street may assume that apparently adult persons, or property under their control, will leave the track in time to avoid injury, such operators can not rely on such assumption beyond the point where prudence would suggest the stopping of the car on reasonable appearance of the inability of the traveler to get out of danger, since the duty is on the operator to keep a lookout for persons on track and to so operate the car that it may be stopped and injury averted to person or property on the track.

3. *Same; Care Required of Travelers.*—One traveling on a street on which cars are operated has the duty to lookout for them, and when the street is obstructed, should listen and in some instances stop.

4. *Same; Injuries of Persons on Track; Evidence.*—Where the breach of duty relied on was the failure to employ proper means to avert the injury after a discovery of the traveler's peril, knowledge of the peril before injury must be shown; and this is not done by mere proof of a breach of duty to look for persons in peril regardless of the place where the injury occurred, in the absence of proof of wilfullness or wantonness.

5. *Same; Liability.*—Where a traveler whose peril and inability to extricate himself therefrom could have been discovered by the motorman, had he kept a lookout, his failure to keep a lookout for travelers on the street, was the proximate cause of the injury, aside from wantonness or willful misconduct.

6. *Same; Contributory Negligence.*—Where the injury was occasioned by the mere failure of the motorman to keep a proper lookout for travelers on the track, the contributory negligence of the traveler will defeat a recovery.

7. *Same.*—Where the motorman of a car, after discovery of the traveler's peril, failed to exercise proper care, the initial negligence of the traveler became only a condition raising the duty to avert the injury, and his breach of duty became the proximate cause of the injury, authorizing a recovery, unless the traveler was guilty of contributory negligence, concurrently with or subsequently to the negligence of the motorman.

8. *Same; Complaint.*—Actual knowledge of plaintiff's peril is necessary to a recovery against defendant for a failure to exercise

reasonable care after a discovery of peril; therefore, a complaint alleging that plaintiff's position of peril was known to the motorman, or by the exercise of reasonable care could have been known to him, and that by the use of such means at hand, the motorman could have stopped the car in time to have prevented the collision, is in the alternative, and does not amount to a charge of actual knowledge.

9. *Same.*—A count charging simple negligence, a negligent failure to take means to avert injury after discovery of peril and wantonness or wilfullness, is inconsistent. Count 2 is subject to this criticism.

10. *Same.*—A count alleging that plaintiff was rightfully at the crossing where a great many people were accustomed to pass, and averring that it was the duty of the motorman to so operate his car that it might be under such control as to be stopped before striking one on the track, and that the car was negligently operated at a reckless speed so that the motorman was unable to bring the car to a stop before the collision, charges simple negligence, anterior to a breach of duty raised by the discovery of peril.

11. *Same; Defenses; Contributory Negligence.*—A plea alleging that defendant negligently drove on the track ahead of the car, that the street was wide enough for plaintiff to have driven on either side of the track without injury, that the car was in plain view, and that plaintiff could have stopped until the car passed, etc., is a sufficient plea of contributory negligence available as a defense to a complaint charging simple, anterior negligence, but does not state a defense to a complaint based on the failure of the motorman to exercise proper care after discovery of peril.

12. *Same; Complaint; Sufficiency.*—A complaint alleging negligence of the company in general terms, without averring the name of the negligent servant, is sufficient.

13. *Negligence; Discovered Peril.*—Whether the person injured is a trespasser or not, the principle of negligent breach of duty after discovery of peril is the same, and in each case, knowledge of the peril requires the use of all known means to avert injury.

14. *Same; Wilfulness and Wantonness.*—When applied in cases of injury to a person by a breach of duty where the peril of the person injured is known, wilfulness or wantonness implies a direct intent to inflict injuries, or an act done or omitted with the consciousness that it would probably result in injury.

15. *Same; Contributory Negligence.*—Contributory negligence of the person injured is no defense where the proximate cause of the injury to one known to have been in peril is due to a wilful or wanton wrong.

16. *Same.*—Where the proximate cause of an injury to one known to be in peril is an act of simple negligence, contributory negligence of the person injured concurrent with or subsequent to that of the person charged with negligence after discovery of the peril, defeats recovery.

17. *Damages; Injuries; Complaint.*—Where the complaint definitely enumerates the elements of damage alleged to have been suffered by the plaintiff and his property, it is sufficient without designating the amount claimed for each element of damage.

18. *Trial; Instructions; Request.*—Where counsel present several charges written on one sheet of paper, the court may treat it as a single request and refuse all the charges if one be bad. The better practice is to present each special charge to the court on separate pieces of paper.

(Denson and Mayfield, JJ., dissent in part.)

APPEAL from Calhoun Circuit Court.

Heard before Hon. JOHN PELHAM.

Action by Harry Rosen against the Anniston Electric & Gas Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Plaintiff's complaint was substantially as follows:

(1) The plaintiff claims of the defendant, a corporation, the sum of $1,500 damages, for that, towit, on the 14th day of May, 1906, while the plaintiff was attending to some private business, riding in a buggy drawn by a horse along Pine avenue, which is a public street in the city of Anniston, Ala., and just as he was turning out of Pine avenue into and for the purpose of going westward along Fifteenth street, which is another public street in said city, one of the electric cars of the defendant, in charge of and being operated by an agent or servant of defendant, ran violently against plaintiff's horse and buggy, said buggy was demolished, and said horse thrown violently to the ground and his leg broken, and the plaintiff was thrown from the buggy to the ground. The plaintiff avers that the place of said collision was a street crossing, and a populous district in said city, and that he was turning from Pine avenue into Fifteenth street for the purpose of going westward along Fifteenth street on business as aforesaid, and defendant's car was approaching from a westerly direction along Fifteenth street, and was then, towit, 70 yards distant from the point of collision and in plain view of plaintiff's horse and buggy, and said motorman then and there in charge of said car saw, or by the exercise of reasonable care

could have seen, plaintiff's buggy and horse in a position of peril on the track of the defendant, and he was then sufficiently far from the same, had he used due care and the means at hand, to have stopped said car before the collision, and thereby have prevented the injury, but he did not do so; and the plainitff avers, further, that just before or about the time the front wheel of his buggy had reached the north rail of the tracks, said car was, towit, 60 feet distant, and the plaintiff averred that even then said agent or servant of defendant in charge of said car saw, or by the exercise of reasonable care could have seen his peril, and by the use of means at hand could have stopped said car in time to have prevented said collision and injury, but he failed to do so, and in consequence plaintiff suffered injury in this: Here follows a catalogue of his injuries and special damages. It is alleged that the horse was so injured that he was rendered worthless, and that the buggy and harness were totally destroyed, and that they were the property of plaintiff.

(2 ) Plaintiff claims of the defendant, a corporation, the sum of $1,500 damages, for that heretofore, towit, on the 14th day of May, 1906, the defendant was engaged in the operation of electric street cars in the city of Anniston, Ala. On said date the defendant's said agents and servants, in charge of and operating one of its cars, after discovering that the plaintiff and his horse and buggy were on defendants' track in a position of peril, and in danger of being injured, failed to exercise due care and diligence to avoid injuring plaintiff, when the exercise of such care and diligence would have avoided injuring him, whereby said car struck said horse and buggy, and he was injured thus: Here follows a catalogue of his injuries and special damages. And plaintiff avers that the defendant's agent or ser-

vant, in charge of or operating said car, saw and knew of his peril; but, notwithstanding this, he wantonly and recklessly or intentionally ran said car against him, and that he did not use the means at hand to prevent said collision and injury, when the use of such means would have prevented same, with same allegation as to horse and buggy as made in count 1.

(3) Same as 1, except that it is alleged that, just about the time the front wheel of the buggy reached the north rail of the track, plaintiff's horse balked or stopped, while plaintiff was trying to pull him off the track, and that said car was about 60 feet distant, and that even then the agent or servant of defendant, in charge of said car, saw, or by the exercise of due care and diligence could have seen, his peril, etc.

(4) Formal charging part same as 1. It is then alleged that the intersection of Pine avenue and Fifteenth street, where plaintiff turned out of Pine avenue into Fifteenth street, is a public street crossing, where a great many people, horses, and vehicles are accustomed to pass and repass, and was such on said date; and plaintiff avers that it was the duty of said agent or servant, in charge of and operating said car, to have run and to have kept said car under such control as to have been able to bring the same to a full stop before striking a person or thing on the track; but plaintiff avers that on such occasion the agent or servant of defendant, in charge of and operating car, ran the same at such a reckless and rapid rate of speed that he was unable to bring the same to a full stop before striking the plaintiff's horse and buggy, after he had discovered the said horse and buggy were on the track in a place of peril at or near the intersection of Pine avenue and Fifteenth street, whereby said car struck plaintiff's horse and buggy, and he was injured thus: Here follows a catalogue of the injuries to the person, horse, and buggy.

The grounds of demurrers are sufficiently stated in the opinion. The second, third, fourth, fifth, sixth, and seventh pleas were pleas of contributory negligence. The fifth, sixth and seventh are failure to stop, look, and listen; the fourth, that plaintiff negligently drove his horse and buggy on said car track, and turned it up said car track towards the car and that it was negligence on the part of plaintiff not to have driven across said track and it was negligence to have driven on said track ahead of said car. The third avers the efforts to stop the car and the failure to do so after using all means, and that before driving over defendant's railway plaintiff failed to look for defendant's approaching car, and drove his said horse on the track ahead of said car. The second plea alleges that the street was wide enough where the collision occurred for plaintiff to have driven on either side of said track without injury, that the car was in plain view of plaintiff, that plaintiff could have stopped his horse and buggy until the car passed on, or that he could have turned the said horse and buggy up or down said street, with ample room to have avoided the collision, but that he did neither of these things, but negligently drove or allowed his horse to start across said track in front of defendant's car, and turned said horse and buggy towards said approaching car, which negligence proximately contributed to his injury.

BLACKWELL & AGEE, for appellant. It is necessary that the complaint specify the amounts sought to be recovered.—13 Cyc. pp. 176 and 179, and notes. The trial court took the view that the 1st, 2nd and 3rd counts of the complaint counted on willful, wanton or intentional negligence, but these counts do not make a case of that character.—*Anniston E.. & G. Co. v. Elwell,* 144 Ala. 321; *Bir. R. & F. Co. v. City Stables,* 119 Ala. 650;

[Anniston Electric & Gas Co. v. Rosen.]

*Bir. R. & E. Co. v. Baker*, 132 Ala. 518. The court erred in sustaining the demurrers to the pleas of contributory negligence.—*Bir. R. & E. Co. v. Pinkard*, 124 Ala. 375; *Schneider v. Mobille L. & Ry. Co.*, 146 Ala. 344. The duty on the motorman to stop the car on seeing a person in peril and the duty of the person crossing the track is the same, and a failure of the person driving the vehicle across a street car track to look for the approach of cars is contributory negligence.—*B. R. L. & P. Co. v. Oldham*, 141 Ala. 195; *Highland A. & B. R. R. Co. v. Maddox*, 100 Ala. 620; 27 A. & E. Ency of Law, 81. The motorman on an electric car has the right to presume that a person driving a vehicle will not attempt to cross the track so as to incur injury to him or his vehicle.—*Schneider v. Mobile L. & Ry. Co. supra; B. R. L. & P. Co. v. Clark*, 41 South. 829. The court erred in its oral charge.—*Pullman Palace Car Co. v. Adams*, 120 Ala. 581, and authorities there cited; *May v. Williams*, 27 Ala. 270. Counsel discuss charges given and refused but without citation of authority.

TATE & WALKER, for appellee. It was not necessary to aver the name of defendant's agent or servant operating the car.—*Armstrong v. Montgomery St. Ry. Co.*, 123 Ala. 245; 119 Ala. 615. Counts 1, 2 and 3 as amended sufficiently charged negligence.—*K. C. M. & B. R. R. Co. v. Flippo*, 138 Ala. 487; *G. P. R. R. Co. v. Davis*, 92 Ala. 307. The plaintiff was not a trespasser.—*Anniston E. & G. Co. v. Elwell*, 144 Ala. 317; *B. R. & E. Co. v. City Stable Co.*, 119 Ala. 650; *Bir. R. & E. Co. v. Baer*, 126 Ala. 135. Count 2 as amended was not subject to demurrers interposed.—*Levin v. M. C. R. R. Co.*, 109 Ala. 334; *M. & C. R. R. Co. v. Martin*, 117 Ala. 367; *L. & N. v. Orr*, 117 Ala. 367. The pleas interposed constituted no defense to counts 1, 2 and 3.—*B. R. & E. Co.*

*v. Brantley,* 141 Ala. 614, and authorities cited. Counsel discuss charges given and refused, but without citation of authority.

McCLELLAN, J.—The injury complained of was suffered by the plaintiff, in person and property, in consequence of the collision therewith of a street car then in operation on a public thoroughfare in the city of Anniston. The original complaint contained two counts, to which defendant's (appellant's) demurrers were sustained. After amendment, the complaint consisted of counts 1 to 4, inclusive. All, save the fourth, would found the liability of the defendant upon the breach of duty by the servant of the defendant, arising out of plaintiff's imperiled condition. The principle is familiar, and the sixteenth ground of the demurrer, addressed to these counts, takes the point that it is not averred that the servant in question knew of plaintiff's peril in time to have prevented the injury.

The relative rights of travelers in public streets and street cars operated therein have been defined as being equal, not exclusive, in favor of or against either.— *Schneider v. Mobile L. & R. R.,* 146 Ala. 344, 40 South. 761. The exercise of the common right, by each, must be such as not to unreasonably hinder or endanger either in the use of the street; and upon the operative of the street car rests, as of course, the duty to be dilligent in keeping a lookout for persons using the street and to bring to the operation of the car, under such circumstances, such measure of care and prudence as the common right enjoyed by the traveler and the street car suggest. This necessarily imposes upon the carrier the duty to operate its cars, in public streets, under such speed, as that, if persons or property be upon or dangerously near the track of the street railway, the car

may be, with skilled application of stopping appliances, stopped, and injury thereto averted. But this duty is qualified to the extent that the operative of the car may assume that apparently adult persons, or property, such as horses and vehicles in the control of persons apparently adult, will leave, in time to avert injury, the track or dangerous proximity to it; but the stated qualification is also qualified by the requirement that the operative is forbidden to rely upon the stated assumption beyond the point where prudence and care would suggest the stopping of the car, such prudence and care being suggested, to a reasonably prudent man, by the reasonable appearance of inability upon the part of the party imperiled to remove himself or property from danger, or from such circumstances as would indicate, to the reasonably prudent operative, that the party imperiled, or likely to become so, is unconscious thereof.—*Schneider v. Mobile L. & R. R., supra.* On the traveler upon the street the duty rests to "always * * * look for an approaching car, and, if the street is obstructed, to listen, and in some instances to stop. * * *" *Birmingham R. L. & P. Co. v. Oldham,* 141 Ala. 195, 199, 37 South. 452.

As stated before, all of the counts except the fourth would ascribe the negligent misconduct, resulting in the injury here involved, to a breach of duty after discovery of peril. The statement of the doctrine declaring the duty relied upon, in breach, for a recovery by this plaintiff, announces in terms the condition to the creation of the duty, viz., knowledge of the peril with which the party injured is circumstanced before his injury. This knowledge has been otherwise referred to in the descriptive term "aware," meaning "informed." The requisite knowledge is of the fact that the party injured was in peril. Manifestly this condition (knowl-

edge) to the duty (pretermitting wanton or willful mis-
conduct, to be later considered) cannot arise out of a
breach of duty to look out for persons, etc., in peril,
whatever the place of injury.  If the duty be to keep a
dilligent lookout, and the duty be merely negligently
breached, the consequence is the opposite of knowledge,
namely, want of knowledge, and that, on this phase of
the subject, attributable only to the failure to observe
that course of conduct which would have probably led
to knowledge.—*Sou. Ry. v. Bush,* 122 Ala. 470, 26 South.
168.  If a motorman, whose duty it is to keep a dilligent
lookout for travelers, etc., on public streets traversed
by his car, forsake his duty and engage in a diverting
conversation with a passenger on his car, and a traveler,
whose peril and inability to extricate himself therefrom
would have been discovered by the operative, had he
kept the lookout required, is injured, the proximate
cause, aside from wanton or willful misconduct therefor
must be ascribed, not to the stated condition of peril in
which the traveler was placed, but to the operative's
dereliction in not keeping the lookout prescribed.  He
did not know the peril stated, because he violated his
duty to look.  Such a breach of a duty, unless raised by
the circumstances to the character of wrong commonly
called "willfulness" or "wantonness," may be defended
and defeated as ground for a recovery by the contribu-
tory negligence of the traveler, if attending his conduct,
in failing to observe the care due from him (traveler)
in placing himself in a position wherein injury to him
might result from a breach by the operative of the duty
to keep a dilligent lookout.  This must be true, because
the order of causation, put in motion by the negligence
counted on, viz., failure to keep a dilligent lookout, was
not broken by the creation, by discovery of the peril by
the operative, of a subsequent duty to employ all means

to avert injury to one whose peril is known to the dere-
lict operative.—*L. & N. R. R. Co. v. Young*, 153 Ala. 232,
45 South. 238, 16 L. R. A. (N. S.) 301. When the sub-
sequent duty is raised, as stated, then the initial negli-
gence of the injured party becomes a condition only,
upon which the thereupon arising duty to avert the in-
jury operated to afford the proximate cause of the in-
jury, unless the imperiled party is, on his part, concur-
rently with or subsequently to the negligence of the
operative of the car, after discovering the perilous situ-
ation of the injured party, contributorily negligent,
which, if found, exempts the defendant from the conse-
quences of the subsequent negligence of its employe.—
*L. & N. R. R. Co. v. Young, supra.*

The relative rights of travelers and street cars, in
public streets, as we have restated them, necessarily
negative any relation of either to the streets or to the
other as trespassers. The right to be thereon exists in
each, and the duty each owes to the other, in the premi-
ses, is, in keeping with the common right of each, to
avoid, by the exercise of due care and prudence, injury
and embarrassment in the use of the street. But the
fact that a traveler is not a trespasser in using the street
cannot affect to alter the duty, for or against either the
car operative or the traveler, where one's condition of
peril is known to the operative. Whether one is or is
not a trespasser, the condition to the application of the
principle of the negligent breach of duty after peril
is discovered is the same. The duty to avert injury to
one imperiled is the same, whether his relation to the
dangerous agency theretofore was wrongful or not,
whether his situation of peril was the result of right or
wrong conduct; provided, of course, the operative knew
of the peril to which the injured party was subjected.
Whenever the knowledge stated is brought to the opera-

tive, his duty is to employ all means, known to one skilled in his place, to avert injury.

Coming to the more aggravated misconduct—willfulness or wantonness, as these terms are applied in cases of injury to person or property—with reference to the performance of the duty arising where the beforestated peril is known to the operative, our decisions establish these conditions precedent to the ascription of the more aggravated wrong to the alleged derelict party: That the injury was the result of a direct intention to inflict it, or that the injury was the result of an act or omission to act as duty required; the action or failure to act being then taken or omitted with the consciousness that such act or omission would probably eventuate in injury. The standard for determination of the inquiry whether the act or omission to act was wanton or intentional must necessarily be the same, regardless of the reason for the creation of the duty in the premises. Given the duty to avert injury, the character of the act or omission to act coloring it as merely negligent, or as wanton or willful in negation of mere negligence, depends upon the presence, at the time the duty should have been performed, of the conditions we have restated for wantonness or willfulness vel non. In natural consequence, the proximate cause of an injury to one known to have been in peril may be the product of simple negligence or of willful or wanton wrong. If characterized by the elements essential to make a case of willful or wanton wrong, then contributory negligence of the imperiled party, such as negligent failure to conserve his own safety after he has become aware of his peril, is, as in cases generally, no defense. But if the duty to avert injury to one known to be in peril is unobserved, from inadvertence or mistake, and without the conscious indifference to probable consequences stated before, then

contributory negligence of the injured party—concurrent with or subsequent to that of the party charged, after discovery of peril—such as the negligent failure to conserve his own safety after he has become aware of his peril, is a defense, and will defeat a recovery for such breach of duty predicated upon discovery of the injured party's peril. In *L. & N. R. R. Co. v. Young,* *supra,* we noted many of our decisions declarative of the principles stated in respect of initial, subsequent, and contributory negligence, and hence do not recite them.

Applying these principles to the complaint as amended, the sixteenth ground of demurrer should have been sustained to counts 1 and 3. Both of these counts allege that plaintiff's position of peril was known to the motorman, "or by the exercise of reasonoble care" could have been known to him. The alternative averment is, of course, not the equivalent of an averment of the requisite knowledge. The pleader had for this alternative averment high authority in *B. R. L. & P. Co. v. Brantley,* 141 Ala. 614, 37 South. 698. In that cause this court approved charge 3, requested for the plaintiff therein, which charge declared, in effect, among other things, that, since the duty to keep a diligent lookout was on the motorman, the "law charges the motorman with seeing the exposed condition of the wagon or of the plaintiff. * * *" Evidently these counts were drawn in the light of the *Brantley Case.* We feel compelled, upon principle and authority, to condemn the proposition quoted from the approved charge. If the proposition be sound, then actual knowledge is not an essential condition to the creation of the duty to avert injury after discovery of peril. On the contrary, the condition is suppliable as a matter of presumptions arising from the mere existence of the duty to keep a lookout. This court, in *Osborne v. Ala. S. & W. Co.,*

135 Ala. 571, 577, 33 South. 687, ruled that, in pleading, notice is not the equivalent of knowledge, thus in consequence, we think, refuting the proposition, less strong than that treated in the *Osborne Case,* that from the mere existence of a duty the law will, in such cases as this presume such actual knowledge of peril as the performance of the duty would have afforded. To attain such a result as the *Brantley Case,* approves, it must be presumed that the motorman performed his duty to keep a diligent lookout, and still further, and additionally, to presume that such lookout would have resulted and did result in his actual knowledge of the peril. Of course, to conclude actual knowledge from such bases is assumption not supported by fact.

Count 2 avers that the motorman knew of plaintiff's peril and that of his property, and "failed to exercise due care and diligence to avoid injuring plaintiff, when the exercise of such care and diligence would have avoided injuring him." After describing injuries received, both to person and property, it is further averred in this count that "defendant's agent or servant in charge of and operating said car saw and knew of his peril, but notwithstanding this he wantonly and recklessly or intentionally ran said car against him, and that they did not use the means at hand to prevent said collision and injury when the use of said means would have prevented same." It is evident from a reading of the count that it is inconsistent and repugnant, as objected in the twenty-seventh ground of demurrer. In one phase it avers a negligent failure to take means to avert injury after discovery of peril, and latterly therein ascribes the injury to wanton and reckless or intentional driving of the car against plaintiff, and still later therein avers simply that means at hand were not used to avert injury, as could have been done by such use. The lines between

[Anniston Electric & Gas Co. v. Rosen.]

wanton and willful wrong and such wrong as results from simple negligence ,of course, compel, in pleading, the observance of the distinctions between the two. The primary pleading should leave no doubt of the character of the wrong imputed—whether wanton or willful, or merely negligent. Duplicity in this respect is not tolerable.—*L. & N. R. R. Co. v. Markee,* 103 Ala. 160, 15 South. 511, 49 Am. St. Rep. 21. The question whether a given count is in simple negligence, or for wantonness or willfulness, oftenest arises on the propriety of the plea of contributory negligence, permissible as a defense to the former, but not to the latter. So many of our cases have taken the course consequent upon a determination of the question stated, and accordingly allowed that species of plea. But, where the count assumes to charge both, and the demurrer takes the point, the court cannot aid the inaccuracy of pleading by choosing when the pleader has not chosen.

Count 4, after setting forth the rightfulness of plaintiff's presence in and use of the public street, and which was a place—street crossing—where a great many people and turnouts were accustomed to pass and repass, and were so doing where the injury occurred, avers, in substance, that it was the duty of defendant's servant or agent to so operate the car as that it might be under such control as that it might be brought to a full stop before striking a person or thing on the track; that this car was so negligently operated, in that it was run under such rapid and reckless rate of speed that the operative was unable to bring the car to a full stop before striking plaintiff and his property, after the operative had discovered the peril of plaintiff and his property on the track. This count cannot be held to charge willful or wanton injury, for the reason that it is not averred therein that the operative of the car knew of the con-

ditions of accustomed frequent use of the street crossing in question, so as to impute to him knowledge of the probability of the presence there on that occasion, on the track or in dangerous proximity to it, of persons or property liable to injury by his car.—*M. & C. R. R. Co. v. Martin,* 117 Ala. 367, 385, 23 South. 231, and its many successors in, ruling on this point. The count, then, is in simple negligence; and we must determine whether the negligence imputed is initial or subsequent, as related to the presence of plaintiff on or dangerously near the track—whether, to be more concrete, the negligence ascribed was a breach of duty predicated upon the peril alleged to have been discovered, or, on the other hand, was anterior in order of committal to such discovery of peril. If the averments refer to initial negligence, as indicated, then, of course, negligence of the plaintiff, if present on the occasion in putting himself or his property in a position of peril, would be a pleadable defense. If, on the other hand, the negligence averred refers to a duty breached after discovery of peril, then such negligence of the plaintiff, if present, would not be pleadable for the reasons we have before stated.

The court below, in overruling the demurrer to the several pleas of contributory negligence to the fourth count, evidently construed the count as charging negligence anterior to a breach of duty raised by discovery of peril. We affirm the correctness of this construction of the count. Since a willful or wanton wrong is not therein imputed, to construe the count as charging subsequent negligence after peril discovery would be to ignore the unequivocal averment of duty, and its breach, in respect of the operation of the car prior to and independent of the discovery of plaintiff's peril. The idea sought to be stated in the count is, in short, that the operative was so negligent in the operation of the car,

at or about the street crossing mentioned, that when he discovered plaintiff's peril he was powerless to avert the impact by the use of all means at hand to stop the car. So interpreted, the count was not subject to the demurrer assailing .it, though we are not prepared to affirm, and do not consider the question, that the broad statement of the duty set forth in the count is sound—a matter not tested or raised by any ground of the demurrer interposed. Our recent cases of *B. R. L. & P. Co. v. Brown,* 152 Ala. 115, 44 South. 572, and *B. R. L. & P. Co. v. Jones,* 153 Ala. 157, 45 South. 177, are noted as bearing on these questions. The first of these decisions involved an injury not occurring on a track in a public highway; and the second dealt with an injury to an infant, not chargeable with contributory negligence, and hence the holding therein, in one phase of the case, that the negligent failure of the operative to keep a dilligent lookout, if proximately causing the injury, rendered the defendant liable, regardless of whether the peril of the child had been discovered or not. These cases are, therefore, not in point in the determination of this appeal.

Turning to the pleas of contributory negligence, and applying the principles announced before, none of these pleas set up matter in defense of the subsequent negligence charged in counts 1 and 3. The eighth ground of plaintiff's demurrer took the objection indicated. However, such pleas were, as the court below ruled, answers to the fourth count of the complaint. These pleas, as matter of defense to the fourth count, were not, we think, subject to any of the objections to substance, suggested by the demurrer.

The court erred in overruling defendant's demurrer to counts 1, 2, and 3, for the reasons stated, though we should add that those grounds of defendant's demurrer assailing the counts for failure to aver the name of the

alleged derelict servant and to designate the amount claimed for each element of damage were not well taken Our system of averring, in such cases as this, negligence in general terms, has become fixed beyond hope of change, even if it were thought desirable. The elements of damage alleged to have been suffered by plaintiff and his property were definitely enumerated in the complaint; and we know of no ruling by this court, nor good reason, justifying a departure from the universal practice, in this state, of stating in the complaint, without apportioning, the total damage claimed for the injuries averred.

None of the assignments rest on the giving or refusal of special instructions for either litigant. There are assignments complaining of portions of the court's oral charge. Specific treatment of these assignments is unnecessary, in view of the conclusions stated before.

The last assignment is as follows: "In refusing the request of defendants counsel to' write 'Given' or 'Refused' on each of the several charges from 1 to 8, inclusive, and sign his name thereto separately." From the bill it appears these special charges were written on one sheet of paper. The court made one indorsement of "Refused" on this sheet; but counsel for defendant requested the court to enter the indorsement, stated in the quoted assignment, on or opposite each of said charges 1 to 8, inclusive. The court declined to do so, treating the request as single of all of said charges. This action was proper. Counsel not having separated these charges, the court was under no duty to do so. Special charges should, if intended, by counsel requesting them, to be separate requests, and not in bulk, always be presented to the court on separate sheets or pieces of paper.

[Louisville & Nashville Railroad Co. v. Price.]

The errors indicated require the reversal of the judgment and the remandment of the cause.

Reversed and remanded.

TYSON, C. J., and DOWDELL, SIMPSON. and ANDERSON, JJ., concur.

DENSON, J.—1 concur in the reversal of the judgment; but in respect to count 2 I am of the opinion that the injury complained of is ascribed solely to negligence on the part of the motorman; that the count cannot be construed as ascribing the injury to wantonness, recklessness, or intentional misconduct; and that these aver·ments might well be stricken from the count as surplus·age.

MAYFIELD, J., concurs in the reversal, but is of the opinion that the Brantley Case is not susceptible of the construction given it in the opinion. He is of the opinion that there is no conflict between the Brantley Case and the opinion in this case.