# Birmingham Railway, Light & Power Company *v.* Norton.

## *Damage to Pedestrian.*

(Decided February 14. 1913.   61 South. 459.)

1. *Witnesses; Cross-Examination.*—Where a defendant put up a witness, it is not competent on cross to permit plaintiff's counsel to ask witness if after the witness refused to make any statement concerning his knowledge of the case, counsel did not ask him why he was willing to make a statement for defendant, and not for plaintiff, as this was a mere repetition of the argument of counsel to the witness before he was put on the stand.

2. *Same; Showing Bias.*—Where a witness was not in the employ of a street railway, nor in any way connected with it, but was shown to have gone to their office and made a statement,. it is competent for plaintiff to show on cross-examination, as tending to show bias, that witness was asked by plaintiff's counsel to tell what he knew about the case, and that he refused to do so, stating that he would not tell anything until he was placed on the stand, and at the same time admitting that he had made a statement for defendant.

3. *Trial; Objection to Evidence; Sufficiency.*—Where part of the testimony sought to be elicited was not subject to the grounds of objection as stated, and the question was objected to as a whole. the objection was properly overruled.

4. *Street Railways; Crossing Accident; Complaint.*—The complaint in this case examined and held not to be objectionable as being vague, uncertain or indefinite, or as failing to allege with sufficient certainty the violation of any duty, or as containing inconsistent or repugnant averments, or as stating two separate and distinct causes in one count. or as not sufficiently stating the facts constituting wantonness.

5. *Same; Instructions.*—Where the complaint charged negligence in one count and willfulness and wantonness in another, a charge asserting that it was not necessary to a recovery under either count that the motorman should have had any actual desire to injure plaintiff, or anyone else, was not improper.

6. *Same.*—A charge asserting that even if plaintiff was guilty of negligence which proximately contributed to his injury, he would still be entitled to recover if the jury were reasonably satisfied from the evidence that the count alleging willfulness and wantonness was true, was not erroneous.

7. *Same.*—A charge asserting that the fact that plaintiff was guilty of negligence in going on or near the track was not necessarily, as a·matter of law, the proximate cause of his injury, but

[Birmingham Railway, Light & Power Company v. Norton.]

that it was for the jury to determine what was the cause of the injury, was proper.

8. *Same.*—A charge asserting that whether the motorman was guilty of negligence depended on whether he acted as a reasonably careful and prudent motorman would have done under similar circumstances, and that if by reason of excitement or otherwise, he did something which an ordinarily cautious or prudent motorman would not have done, or failed to do under the same circumstances, he was negligent, was a correct statement.

9. *Same.*—A charge asserting that even if the plaintiff went on the track or so near the car that the motorman could not stop in time to avoid knocking him down, yet, if after the motorman became aware of plaintiff's peril, he could, by a diligent and careful use of all the means at his command, have avoided the injury, plaintiff's act in going on the track would not be the proximate cause of the injury and he would be entitled to recover under the count charging negligence, was proper.

10. *Same.*—A charge asserting that if plaintiff's count charging simple negligence was made out, he was entitled to recover, unless the jury was satisfied from the evidence that he was guilty of negligence which proximately contributed to his injury, was properly given.

11. *Same.*—While it was proper to charge that it was the duty of the motorman to keep a constant and diligent lookout for persons or things on the track, it was error to charge that if by doing so he could have seen a person or thing on or near the track in time to have avoided injuring him, the law charged him with seeing such danger whether he saw it or not.

12. *Same; Contributory Negligence.*—It was negligence for a deaf man, after passing behind a southbound street car, to cross the five foot space to the northbound track without stopping or looking before going on the track, where he was struck by a northbound car.

13. *Same; Wantonness.*—Where the motorman could not be said to be guilty of wantonness or willful wrong in knocking plaintiff down, it was not wantonness for him to back the car two or three feet to get the fender off of the plaintiff, instead of alighting and raising the fender and calling for someone to lift plaintiff out, where the fender weighed between forty and fifty pounds, and was so constructed that it would roll off of an object under it, although the motorman might have erred in judgment as to the best means of relieving plaintiff of the weight of the fender; hence, under these circumstances, it was error to refuse to charge that punitive damages were not recoverable.

14. *Negligence; Wanton Negligence or Willful Wrong.*—An error of judgment as to the result of doing an act or the omission of an act, with no evil purpose or intent or consciousness of probable injury may constitute simple negligence; to constitute a willful wrong there must be a purpose to inflict the injury, and to constitute wanton negligence, the act must be consciously or intentionally done or permitted with the knowledge from the circumstances and conditions that it would probably cause injury and with a reckless indifference to the consequences.

[Birmingham Railway, Light & Power Company v. Norton.]

APPEAL from Jefferson Circuit Court.

Heard before Hon. E. C. CROWE.

Action by C. H. Norton against the Birmingham Railway, Light & Power Company for damages for injuries received in a crossing accident. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Count 1 is as follows: "Plaintiff claims of defendant $5,000 as damages for that heretofore, on, to-wit, the 3d day of November, 1910, defendant was engaged in the business of running and operating street cars along and over the public streets of the city of Birmingham, Ala., and that on said date, on, to-wit, Twentieth street in said city, one of defendant's servants or agents in charge or control of one of defendant's cars, while acting within the line and scope of his authority as such, so negligently managed, controlled, or operated said car that said car crushed, bruised," etc. (here follows catalogue of injuries). Count 2: Same as 1, except after the words "authority as such," and adds: "Conscious of his conduct, willfully, wantonly, or intentionally crushed, mangled," etc.

The demurrers were vague, uncertain, and indefinite; does not appear with sufficient certainty what duty the defendant owed the plaintiff; does not appear with sufficient certainty wherein or how defendant violated any duty owed to plaintiff; averments are inconsistent and repugnant; plaintiff's injuries are not sufficiently described; the facts alleged do not constitute negligence, as a matter of law; does not appear therefrom with sufficient certainty what was the proximate cause of the injury; states two separate and distinct actions in one count; and that the facts constituting the wantonness are not sufficiently stated.

The following are the written charges given to the plaintiff.

[Birmingham Railway, Light & Power Company v. Norton.]

"(1) The court charges you, gentlemen, it is not necessary to recovery by plaintiff under either the first or the second count of the complaint that the motorman should have had any actual desire to injure Norton or any one else.

"(2) Even if Norton was guilty of negligence which proximately helped to cause his injury, then plaintiff would be entitled to a verdict if the jury are reasonably satisfied from the evidence that the second count is true; and, to prove the second count, it is not neecssary to prove that the motorman had any actual intent to injure Norton or any one else.

"(3) The mere fact, if it be a fact, that Norton was guilty of negligence in going on or being near the track, in close proximity to an approaching car, would not necessarily, as a matter of law, be the proximate cause of his injury, but the question as to what was the cause of his injury is for the jury.

"(4) Whether a motorman was guilty of negligence or not depends upon whether he acted as a reasonably prudent and careful motorman would have done under similar circumstances.

"(5) If the motorman should, by reason of excitement or otherwise, do something which an ordinarily cautious and prudent motorman would not have done, or failed to do under the same circumstances, then the doing or failing to do that thing would be negligent.

"(6) Even though the jury should believe from the evidence that C. H. Norton did go on the track, or so near the car as that the motorman could not stop in time to avoid knocking him down, yet, if the jury are reasonably satisfied from the evidence that, after the motorman became aware of his peril, the motorman, by the diligent and careful use of all the means at command, could have avoided the injury to Norton, then

the act of Norton in going or being on the track in front of the cars would not be the proximate cause of the injury, and the plaintiff would be entitled to a verdict under the first count, if the jury are reasonably satisfied from the evidence that the first count is true.

"(7) If the jury are reasonably satisfied from the evidence that the first count of plaintiff's complaint is true, which count charges simple negligence only, then plaintiff's case is made out, and the verdict of the jury must be for the plaintiff, unless the jury are reasonably satisfied from the evidence that Norton was himself guilty of negligence, which contributed proximately to his injury."

TILLMAN, BRADLEY & MORROW, and JOHN S. STONE, for appellant. Counsel criticise the 1st and 2nd counts, but cite no authority in support of their contention that demurrers should have been sustained. Counsel also discuss assignments of error relative to the admission and rejection of evidence, but without citation of authority. They insist that the court's oral charge was incorrect, as under the evidence it was not the duty of the motorman to see a thing on the track whether he saw it or not.—*B. R., L. & P. Co. v. Jones*, 153 Ala. 157; *Garth v. Ala. T. Co.*, 148 Ala. 106. Counsel discuss the charges given for plaintiff, but without citation of authority in support of their contention that they were erroneous. They insist that plaintiff was guilty of negligence under the evidence, which proximately contributed to his injury, and that the trial court erred in refusing to charge the jury to that effect.—*L. & N. v. Pearce*, 142 Ala. 680; *Garth v. Ala. T. Co., supra; Moulton v. L. & N.*, 128 Ala. 547; *M. L. & R. Co. v. Baker*, 158 Ala. 491. On these same authorities they insist that the court should have charged the jury that punitive damages could not be awarded.

GIBSON & DAVIS, for appellee. The counts were sufficient and demurrers properly overruled.—*B. R., L. & P. Co. v. Ryan,* 148 Ala. 69; *Russell v. Huntsville R., L. & P. Co.,* 137 Ala. 631. There was no error in the admission or rejection of evidence.—2 Enc. of Evi. 407. The case of *B. R., L. & P. Co. v. Jones,* and the *Garth case* cited by appellant do not support the contention that the court's oral charge was improper. The charges given are all supported by the case of *B. R., L. & P. Co. v. Ryan, supra.* The defendant was clearly liable for punitive damages.—*L. & N. v. Bank,* 132 Ala. 471.

THOMAS, J.—This was an action by a pedestrian for injuries received in being run against by one of the street cars of appellant company while he was attempting to cross the latter's tracks on the streets of the city of Birmingham.

The first and the second count of the complaint, the one predicated on simple negligence, and the other on wantonness and willfulness, we hold sufficient as against the demurrers aimed at them, under the authority of *Birmingham Railway, L. & P. Co. v. Ryan,* 148 Ala. 69, 41 South. 616; *Russell v. Huntsville Ry., L. & P. Co.,* 137 Ala. 628, 34 South. 855; and *Leach v. Bush,* 57 Ala. 152.

Plaintiff's counsel, on cross-examination of one of defendant's eye-witnesses to the accident, who had testified that he had no interest in the case and was not in the employ of the company, asked said witness a question substantially to the following effect, slightly changed by us in arrangement for convenience of treatment here: "Did not I approach you this morning just outside the door, and, after informing you of my name and that I was one of plaintiff's attorneys, request you to please tell me what you knew about the case—what

you saw, if anything—and did not you refuse to do so, stating to me that you would not tell anything about it until you were put on the stand? And then did I not ask you in the same conversation if you had not made a statement for the defendant company, and you answered that you had? Then didn't I ask you why it was that you would make one for the street car company, and not do so for this old man, the plaintiff?" The last subdivision of the question was clearly objectionable, as being but the repetition of an argument made by plaintiff's counsel to the witness before he was put on the stand. However, the question was objected to, as a whole, by the defendant's counsel, and that only on the ground that it called for immaterial, irrelevant, incompetent, and illegal testimony; and the court correctly overruled the objection, if any portion of the testimony sought to be elicited was not subject to the grounds of the objection as stated.

The situation of a witness, his relations with the party calling him, his zeal, bias, or partiality, as shown by his conduct for the party who calls him, is a proper matter for the consideration of the jury in estimating the value of and weight to be given his testimony; and it is a general rule that on cross-examination any fact may be elicited which tends to show such bias or partiality. Here it was shown that the witness, not in the employ of nor in any way connected with the defendant company, went up into their office and made them a statement of what he knew about the accident, and that morning repeated the statement to defendant's counsel, but declined to make any at all for the plaintiff or to inform him in any way of what he knew about it, even upon request. Whether this was due to a sympathy or a leaning of the mind of the witness in favor of the defendant, or antipathy to the plaintiff, or neither, was

for the jury; but it was at least a circumstance, if unexplained, tending to support an inference of bias; and the objection to the question, having for its aim the bringing out of such evidence, was properly overruled.

All the written charges given at the request of the plaintiff, the giving of each of which is separately and severally assigned here by the defendant as error, were approved by our Supreme Court in the case of *Birmingham Railway, L. & P. Co. v. Ryan*, 148 Ala. 71, 41 South. 616, on a similar state of facts.

The defendant excepted to and assigns as error the following portion of the court's oral charge: "It was the duty of the motorman to keep a constant and diligent lookout for persons or things on the track; and if the jury are reasonably satisfied from the evidence that the motorman, by keeping such constant and diligent lookout, could have seen the exposed condition and danger of the person on or near the track in time to have avoided injuring the plaintiff, by the exercise of reasonable care, then the law charges the motorman with seeing the exposed condition of the plaintiff within the time he could have stopped the car, whether he saw him or not." This is a substantial and almost literal duplicate of a charge approved by our Supreme Court in the case of *Birmingham Railway, L. & P. Co. v. Brantley*, 141 Ala. 615, 37 South. 698. But in the later case of *Anniston Electric & Gas. Co. v. Rosen*, 159 Ala. 207, 48 South. 798, 133 Am. St. Rep. 32, that court condemned the principle declared in the latter part of the charge to the effect that, since the duty to keep a diligent lookout was on the motorman, the "law charges the motorman with seeing the exposed condition of the plaintiff, * * * whether he saw him or not." For reasons there pointed out at length, the court erred in giving it here.

[Birmingham Railway, Light & Power Company v. Norton.]

The defendant requested a charge to the effect that, if the jury believe the evidence, they cannot award the plaintiff any damages for the purpose of punishing the defendant, which charge was refused. A proper consideration of this question necessitates here a review of the evidence.

The plaintiff is a deaf and dumb man; but it is not even contended that this fact was known to the defendant's servant or agent in charge or control of the car. He had, however, without dispute, the faculty of sight. He was the only witness examined in his own behalf. It appears that Twentieth street, where the accident occurred, runs north and south, and that on and along it there are parallel tracks of the defendant company. The plaintiff was on the west side of the street at the Model Restaurant, and, at a point not a street crossing, started across to the east side to Collier's Drug Store. He came on and across one of the defendant company's tracks behind a car on it going south, and from it, across the five-foot space between it and the next track, to the next track, where he was struck in the right side by the left corner of a car going north. He says: "I did not see the car before it struck me. I did not stop before going on the track. I did not look before going on the track." His own testimony makes out a clear case of contributory negligence.—*Blaney v. Electric Trac. Co.*, 184 Pa. 524, 39 Atl. 294. There is no dispute but what there was an experienced motorman in charge of the car; that the track was level, and, at the time of the accident, the car was "coasting" or "drifting" at the rate of about three miles an hour, with the current off, and most of the slack out of the chain of the hand brake, so that the car could be the more readily stopped; and that it could have been stopped in a distance of about four feet. The motorman testifies,

without dispute, that he was keeping a steady lookout ahead, and first saw the plaintiff after the car pulled across and left First avenue, and when he was in about three car lengths of the plaintiff, at which time the plaintiff was on the track west and to the left of the track on which the motorman's car was moving, and going obliquely north toward the track on which the car was moving, with his back partly turned towards the car; that he (the motorman), not knowing the plaintiff was deaf and dumb, commenced to ring the gong as soon as he saw him and kept ringing it until the car hit the plaintiff; that, when the car got in about one length of the plaintiff, he seemed to be walking straight north between the two parallel tracks a safe distance from the track on which the car was going, and was a safe distance from the track until the car was right on him; that, when he saw that plaintiff would come in contact with the car, he immediately applied the brakes and stopped the car with one stroke, which was as soon as he possibly could, and within less than four feet, but not until it had hit the plaintiff in the right side and knocked him down after he was partly on the track.

The plaintiff's counsel do not contend that there was any willful or wanton wrong so far, but base their claim for it on the subsequent conduct of the motorman in backing the car in his attempt to extricate the plaintiff from his position under the fender of the car. The only testimony for the plaintiff on this subject is to the effect that although he was knocked down by the car striking him originally, and his head, as a result, hit the street, yet the dragging of him back while backing the car off of him is what injured him; that the car was backed about five feet or more; that by this he was hurt in the arm, body, leg, hip, knee, and side, but did not bleed any; that he was treated at the hospital by two

doctors, used crutches about a month, and lost about six months from work. The motorman testified that, when he stopped the car after striking the plaintiff, plaintiff's legs were under the car and part of his body, between the shoulders and hips, under the fender; that plaintiff was holloing, and he backed the car probably two or three feet to get the fender off of plaintiff's body; that it slid off as he backed the car back, and plaintiff was not dragged by the backing of the car; that he knew that plaintiff's body did not extend far enough under the car for any part of it to be under the wheels; that the fender was made of steel and would weigh some 40 or 50 pounds, with a 2½-inch pipe around its base, so made that it would roll off of an object under it; that the fender was attached to the car in such a way that it would lift up some inches—he did not know how many—when it runs upon an object on a slant; that, as soon as he got the car backed off of the plaintiff, he immediately alighted and went to plaintiff's assistance.

While the fact, as testified to by the motorman, that the fender could be lifted up some inches furnishes an inference that he could have gotten off the car, lifted the fender to this extent, and called for the aid of some one to pull the plaintiff out from under it, yet the means he selected of relieving plaintiff of the weight on his body of this fender by backing the car was certainly the most speedy one—a consideration highly important to the plaintiff in his painful position; a means, too, not ordinarily calculated in its employment to injure plaintiff, on account of the known construction of the fender, so made as to roll off of an object, as testified to; and one that would naturally appeal to a person in the position of the motorman, when confronted with the sudden emergency and the apparent necessity

for prompt action that faced him. He may have erred in judgment as to the best means of accomplishing the purpose desired, but his act bears no element of wantonness or willful wrong, and we are of opinion there is nothing in the evidence from which the jury could infer such; hence the charge mentioned should have been given.

A mere error of judgment as to the result of doing an act or the omission of an act, having no evil purpose or intent or consciousness of probable injury, may constitute simple negligence, but cannot rise to the degree of wanton negligence or willful wrong.—*Birmingham Ry. & Electric Co. v. Bowers,* 110 Ala. 331, 20 South. 345. Unless there was a purpose to inflict the injury, it cannot be said to have been willfully or intentionally done; and unless an act is done, or omitted to be done, under circumstances and conditions known to the person, that his conduct is likely to, or probably will, result in injury, and, through reckless indifference to consequences, he consciously and intentionally does or omits the act, the injury cannot be said to be wantonly inflicted.—*Memphis & Charleston R. R. Co. v. Martin,* 117 Ala. 382, 23 South. 231. The evidence is probably sufficient to warrant a reference to the jury of the question of simple negligence vel non.

We deem it unnecessary to discuss the other points in the record, since they are not likely to arise on another trial. For the errors pointed out, the judgment is reversed.

Reversed and remanded.