# Sheffield Co. *v.* Harris.

## *Crossing Accident.*

(Decided December 18, 1912. Rehearing denied February 12, 1913.
61 South. 88.)

1. *Street Railways; Collision; Negligence; Evidence.*—The evidence examined and held to support a finding that the motorman operating the car which struck the child was guilty of simple negligence.

2. *Same; Wantonness.*—The evidence examined and held to support a finding that the motorman operating the car which struck the child was guilty of such reckless indifference to probable consequences as to· amount to wantonness.

3. *Same; Evidence.*—Where the complaint charged wantonness in the operation of the car, evidence that the street at the point where the accident occurred was in a populous section, and was much travelled, was admissible, as bearing on the question of wanton injury resulting from the operation of the car at a dangerous speed.

4. *Same; Care Required.*—The motorman operating a car on its track so laid as to form a part of the street, must maintain constant watchfulness for those who are in dangerous proximity to the track in using or crossing the street, and must keep his car under such control that it may be stopped before causing injury to a person who is on or dangerously near the track.

5. *Same.*—A motorman operating a car on a track laid in the street cannot assume that a child of tender years on or in dangerous proximity to the track will leave it, and when he sees such a child in such a condition or position, it becomes his duty at once to put his car under such control as to enable him to immediately stop it if necessary to avert injury.

6. *Same.*—Since the rate of speed with which a car may be with safety operated at a given point on a street, may at another time amount to such reckless indifference to the rights of others as to amount to wantonness, under the evidence in this case it was a question for the jury to say whether plaintiff was entitled to a verdict under the 4th count.

7. *Same; Instructions.*—Where complaint alleged wanton negligence a charge asserting that plaintiff did not contend that the motorman intentionally injured him, in effect informed the jury that the plaintiff abandoned the claim that the injuries had been intentionally inflicted and only claimed that they were due to such recklessness as amounted to wantonness, and hence, such instruction was favorable to appellant.

8. *Same.*—Where the evidence tended to show that the motorman saw the child approaching the track, and did not apply the air because the child had a chance to cross the track, or he thought that

the child might stop before getting on to the track, and that when he attempted to stop the car he was unable to do so in time to prevent the accident, a charge asserting that if the child was on the track or in dangerous proximity thereto, and his acts indicated a purpose to cross the track, and the motorman saw him, and purposely failed to use the means at hand to prevent the injury, which means, if used, would have prevented the injury, there was wanton negligence, was not erroneous for leaving out the essential element of consciousness on the part of the motorman that his failure to use the means would probably cause injury.

9. *Negligence; Contributory Negligence; Children.*—A child five years of age is not chargeable with contributory negligence.

10. *Pleading; Obvious Defect; Self Correcting.*—Where the complaint used the word "defendant" where it was plainly intended to use the word "plaintiff" the defect is self correcting.

11. *Charge of Court; Statement of Conceded Facts.*—Where it was conceded that a child was struck by a car while being operated by the servants of the street car company, and while they were acting within the line of their employment, and the only issue was whether the injuries were due to unavoidable accident, or to the wanton or simple negligence of the servant, it was not erroneous to charge that it was admitted that the child was injured by the servants of the street car company, as such was a mere statement of a conceded fact.

12. *Same; Construction.*—Instructions will be construed as a whole, and when it can be fairly done, every statement on any given subject should be construed in connection with other statements on the subject, and if when so construed the law is correctly stated, the charge will be held free from error.

13. *Trial; Exceptions; Good in Part.*—Where a charge is in part good and in part bad, an exception to it as a whole is not availing to present the exception to the part which is bad.

14. *Damages; Personal Injury; Measure.*—The law has no fixed monetary measure for the assesment of damages for personal injury; they must be fixed by the jury in the exercise of their sound judgment in view of the circumstances of the case, subject to review under certain conditions.

15. *Same; Instructions.*—Where there was no dispute as to the fact and extent of the injuries, and the complaint charged both simple and wanton negligence, a charge that if plaintiff was entitled to recover, he was entitled to compensatory damages, and that the jury might add punitive damages as might be deemed reasonable from the evidence as a punishment for the injury, and that in making the estimate the jury should consider the injuries in the light of their experience and award such compensation as their sound discretion deemed fair considering the circumstances, properly limited the damages, and was not error.

(Anderson, Mayfield and Sayre, JJ., dissent in part.)

APPEAL from Colbert Circuit Court.

Heard before Hon. C. P. ALMON.

[Sheffield Co. v. Harris.]

Action by Bryant Harris, pro ami, against the Sheffield Company for damages for personal injury, caused by a collision. Judgment for plaintiff and defendant appeals. Affirmed.

ALMON, ANDREWS & PEACH, for appellant. The court erred in overruling demurrers to counts 1 and 4, and in refusing to give the general charge.—*Rogers v. Brooks,* 99 Ala. 31; *Patrick v. deBardelaben,* 90 Ala. 13; *Pulliam v. Schimpf,* 109 Ala. 182. In this connection, counsel cite the following cases from other jurisdictions as bearing upon the questions presented both on the pleading and the charges.—14 Ky. Law 425; 37 La. Ann. 288; 18 South. 703; 36 Mo. 384; 71 Mo. 276; 34 N. Y. Supp. 867; 3 Ohio 22; 25 Atl. 606; 18 Ohio St. 255; 49 Am. St. Rep. 400; 56 Ind. 396; 34 Atl. 34 Atl. 119. The court erred in refusing to give charges 18, 38 and 26. —*R. R. Co. v. Schauffler,* 75 Ala. 176; *R. R. Co. Jacobs,* 92 Ala. 187; *Same v. Winn,* 93 Ala. 306; *Lee v. DeBardelaben,* 102 Ala. 628. The court also erred in refusing charges 20, 23, 24, 42 and 44 requested by defendant. —14 Gray 69; 76 N. Y. 530; 89 N. Y. Supp. 968. Charges 27-8 should have been given.—3 N. Y. Supp. 418. Charges 50, 29 and 56, 57 and 59 should have been given.—55 Ill. 367; 49 Am. St. Rep. 400; 175 Pa. 559; *Schneider v. Mobile L. & R. R. Co.,* 146 Ala. 348. Charges 64-5 and 68 should have been given.—*Wes. Ry. v. Mutch,* 97 Ala. *Creola L. Co. v. Mills,* 149 Ala. 474; 149 Ala. 613; 146 Ala. 285, 404; 36 Cyc. 1523 and case cited in notes 77-8. Charge 70 should have been given. —*L. & N. v. Brown,* 121 Ala. 222; *M. & C. v. Martin,* 117 Ala. 367. Counsel discuss the other assignments of error in the light of the above authorities, and insist that prejudicial error intervened.

JOSEPH N. NATHAN, and KIRK, CARMICHAEL & RATH-ER, for appellee. No brief reached the Reporter.

DE GRAFFENRIED, J.—The plaintiff, Bryant Harris, was on March 28, 1909, struck by one of the Sheffield Company's street cars and suffered the loss of both of his feet. When the plaintiff received his injuries he was only five years of age, and the law, on account of his age, does not apply the doctrine of contributory negligence to him.

The plaintiff received his injuries in the town of Sheffield, at or near the point in said town where Atlanta avenue, which is 80 feet wide, crosses D street. Atlanta avenue runs north and south, and D street runs east and west. The defendant, the Sheffield Company, owns and operates a street car line on said avenue. The track is imbedded in the street and forms a part of it. The Baptist Church is situated on the corner immediately west of said avenue and immediately south of D street. Atlanta avenue is straight, and for several hundred feet north and south of the point where the Baptist Church stands the view up and down the street is unobstructed from sidewalk to sidewalk. From a point several hundred feet north of the said church on said Atlanta avenue to the point where the plaintiff received his injuries, it is slightly downgrade, and the evidence is in dispute as to whether the car which struck the plaintiff was traveling slowly, at a moderate, or at a rapid rate of speed when the plaintiff was struck.

The motorman testified that the car was, at the time the child was struck, in perfect running and working order, and that he used all means known to a skillful motorman to stop the car when he first discovered the presence of the child on the street car track, and the evidence shows, we think, with reasonable certainty,

that the car was not stopped until after it had passed the point of the plaintiff's injuries about 80 feet.

It appears that the plaintiff, along with other children, had attended Sunday School that morning—the injuries were received by the plaintiff on Sunday morning—and that the two Sunday School classes which were composed of children of tender age, to one of which the plaintiff belonged, had just been dismissed ahead of the other children; that they had left the church; that some of them were standing on the sidewalk and in the street near the sidewalk next to the church; that some of them had crossed the street; and that the plaintiff had either gone partly across the street and then turned back and was going back towards the church when he was struck, or he had walked out to the east rail of the defendant's track and then turned back towards the church, but was struck before he could get off the track.

The defendant insists that the child had crossed the track several feet and walked east and away from the track, when he suddenly wheeled and ran in front of the car; that the injuries were unavoidable; and that the danger could not have been reasonably anticipated. There was evidence, however, on the part of the plaintiff, that the child left the sidewalk in front of the church and proceeded in the direction of the defendant's track, and that he never did get beyond the east rail of the track before he turned and started back towards the church.

However this may be, the child received his injuries while on the defendant's track, and the motorman, in whose plain view these children of tender years were for 400 or 500 feet before he reached the point where they were on the street, testified, "I could see that there were a number of children all along there." These chil-

dren, as we have already said, composed the two junior classes of the Baptist Sunday School; children who, on account of their tender age, were dismissed ahead of the rest of the school, and there is nothing in the evidence tending to show that they or any of them were attended by a nurse or other person of discretion.

As the motorman "could see that there were a number of children all along there" for a distance of several hundred feet before he reached them, he could, also, probably have seen that their sizes indicated helplessness and heedlessness, and that, in passing them, even ordinary prudence would require the exercise of great caution. The evidence of the motorman tends to show that he saw the plaintiff when he left the sidewalk in front of the church and started east across Atlanta avenue, and it also tends to show that the car was then traveling at from eight to ten miles per hour. While the motorman's testimony tended to show that the car was in good working order and that he used all the means known to a skillful motorman to stop the car when he discovered the plaintiff's peril and that he did stop the car as quickly as it could be stopped, there was other evidence in the case tending to show that a properly equipped car, at the point where the injury occurred, operated under the conditions prevailing as they were described as existing at that time by the motorman, running at a speed not greater than six miles per hour, could, by a skillful motorman, have been stopped instantly, and if traveling at a rate of speed ranging from eight to fifteen miles per hour that it could, by a skillful motorman, have been stopped within about 25 feet.

As this car, on the occasion named, ran about 80 feet after the child was struck, and as the motorman claims that he, even before he struck the child, did all that could have been done by a skillful motorman to stop the car, and as he claims to have actually stopped the car as quickly as it could be stopped, it was, we think, under all the circumstances as shown by the evidence, for the jury to say whether, upon the named occasion, the motorman was guilty not only of simple neglect, but, in the matter of the speed at which he permitted the car to travel to the place occupied by the plaintiff and his companions near the church, of that reckless indifference to probable consequences as amounted to wantonness. The motorman admits that he saw the plaintiff when—as he claims—he crossed the track; but he admits that after that time he lost sight of the child until after it had turned around and had started back in the direction of the track and was in dangerous proximity to it. He gives an explanation of why he lost sight of the plaintiff; but the jury may not have believed his explanation, or, if they did, may not have accepted it as furnishing a reasonable excuse for such failure.

A motorman in charge of a street car running upon a track which is imbedded in and forms a part of the street is charged, by the law, at all times, whether his car is in a street which is frequently or one which is seldom used by the public, with *constant watchfulness* for those who, in using or crossing the street, go upon or in dangerous proximity to the track. He is also required to operate his car under such speed and with such control that, if "persons or property be upon or dangerously near the track of the street railway, the car may be, with skilled application of stopping appliances, stopped, and injury thereby averted."—*Anniston*

*El. & G. Co. v. Rosen,* 159 Ala. 202, 48 South. 801, 133 Am. St. Rep. 32.

The motorman of a street car has no right to assume that a child of tender age—such a child as the plaintiff in this case was—who is seen by him on, or in danger-ous proximity to, the track, will leave the track to avert injury. When he sees such a child, or children, on or in dangerous proximity to the track, the law requires him to *at once* put his car under *such control* as to im-mediately stop it, if that becomes necessary to avert injury.—*Anniston El. & G. Co. v. Rosen,* 159 Ala. 195, 48 South. 798, 133 Am. St. Rep. 32.

It is also a familiar proposition that a rate of speed which a street car may, with perfect safety, maintain at a given point on a street at one time, may, at an-other time, amount to that reckless indifference to the rights of others as to amount to wantonness.

Under some of the tendencies of the plaintiff's evi-dence he was, if the jury believed that evidence, entitled to a verdict upon the first count of the complaint, and, under other phases of the evidence, it was for the jury to say whether he was entitled to a verdict under the fourth count.—Nellis on Street Railways, vol. 2, p. 347; *Rosen's Case, supra;* Joyce on Electric Law, §§ 570, 573, 582.

(1) The original complaint consisted of four counts, but the second and third were eliminated, and the case was tried upon the first count, which was a count for simple negligence, and the fourth count, which alleg-ed that the plaintiff's injuries were willfully or wan-tonly inflicted. Both of these counts alleged that the plaintiff was only five years old when he received his injuries. As therefore it is plain that the plea of con-tributory negligence was applicable to neither count,

the action of the trial court in striking that plea as frivolous was free from error.

(2) In both the first and fourth counts the word "defendant" was used where the word "plaintiff" was plainly intended, and that defect was therefore self-correcting. There was a demurrer to these counts, but the demurrer was not well taken. The sufficiency of similar counts, when tested by demurrer, has been so frequently upheld by this court that we deem a citation of authority to sustain this statement as altogether unnecessary.

(3) The trial court gave its instructions to the jury in writing, and numerous exceptions were reserved by the defendant to certain parts of the charge. It is unnecessary to consider all of these exceptions, and we will pass upon only those which appear to have some merit, and which therefore deserve discussion.

(a) The first exception is to that part of the court's oral charge which says, "It is admitted that the plaintiff was injured by the agents and servants of the defendant in charge of one of defendant's cars," etc. The plaintiff was, confessedly, struck by one of the defendant's cars while the same was being operated by its servants and while the servants were acting in the line of their employment. The question in this case was not whether the plaintiff was injured by the defendant's agents or servants while acting in the line of their employment, but whether his injuries were due to unavoidable accident or to the negligence—simple or wanton—of said servants or agents. The above statement of the court was a mere statement of a conceded fact and did not constitute error.—*Stephenson v. Wright,* 111 Ala. 579, 20 South. 622; 2 Mayf. Dig. p. 568, subd. 127.

(b) Those portions of the oral charge numbered 19 and 6 made the basis of assignments of error Nos. 40 and 32 were (when read in connection with the rest of the charge, of which they formed a part), as applied to the evidence in this case, correct statements of the law. —*Rosen's Case, supra.* There runs through the entire charge of the court on the subject of simple negligence this statement of the court to the jury, viz: "It is the duty of a motorman, in charge of a car, to exercise *ordinary care* in the management of the same, so as to avoid, so far as he *reasonably* can, injury to persons using the street for the purpose of travel." And we think that this statement of the court should be read in connection with the above portions of the oral charge of the court to which exceptions were taken, and that, when so read, the portions excepted to are free from error. The charge of the court to a jury must be construed as a whole, and every statement upon any given subject in the charge should, when that can fairly be done, be construed in connection with the other statements of the court upon that subject, and if, when so construed, the law on the subject is fairly and correctly stated, then such statement of the law is free from error.

(c) The fourth count charges that the plaintiff's damages were suffered by him by reason of the "wanton negligence or willful injury" of defendant's servants or agents, etc. The court instructed the jury that the plaintiff did not contend that the defendant's servants or agents "intentionally injured" the plaintiff. When this instruction was given, the evidence was all before the jury, the arguments of counsel had been made, and the court, in effect, told the jury that the plaintiff had abandoned his claim that his injuries had been intentionally inflicted, and only claimed that they were due, at best, to an act of recklessness amounting to wanton-

ness.  This portion of the charge was certainly favor-
able to the defendant, and as to it the defendant has no
right to complain.

(d) The following other portion of the court's charge
was excepted to, and is here vigorously  pressed  as
having been erroneous:  "If you find for the plaintiff
on the fourth count of the complaint, the damages that
he is entitled to recover are compensatory, as I have
heretofore defined compensatory damages to you.  To
this you may add punitive or exemplary damages; that
is, such damages as you may think reasonable and right
in this case from the testimony as a punishment to the
defendant for the plaintiff's injury.  And in making
your estimate of the damages you should consider plain-
tiff's injuries in the light of your experience and award
him such compensation as in your sound discretion, dis-
passionately  considering  all  the  circumstances,  you
deem fair."

We have, for our convenience, divided the above ex-
cerpt from the charge into three sentences, although,
as it appears in the transcript, the whole excerpt is in
one sentence.  We do not think that the above excerpt,
even if it be conceded to be technically faulty in some
minor particulars (and to these we shall later refer)
is, when given a fair interpretation (such an interpre-
tation as an intelligent jury would be expected to give
it), as applied to the evidence in this particular case,
an incorrect statement of the law.  We think that the
word "discretion," as it appears in the third sentence
of the above excerpt, was used by the court, and under-
stood by the jury, as synonymous with the word "judg-
ment," and that the words "under all the circum-
stances," appearing in the third sentence, really, as the
facts in this record appear, were entitled to be receiv-

ed by the jury, and were actually interpreted by them, as meaning "under all the evidence."

Elliptical forms of expression are not uncommon, and they rarely mislead. In this case the law was powerless to furnish to the jury a perfect standard by which to measure the plaintiff's damages. Both of his feet were gone. He had been deformed and rendered a helpless cripple for the balance of his life. He had suffered, and he was only five years old. His damages were confessedly great, but the law has no fixed monetary standard by which human suffering can be measured, neither has it a fixed value for both of the feet of a human being. "The damages," says the Supreme Court of the United States, "in these cases, must depend very much upon the good sense and sound judgment of the jury upon all the facts and circumstances of the particular case."—*Railroad Co. v. Barron,* 5 Wall. 90, 18 L. Ed. 591. "The law does not attempt to fix any precise value for the admeasurement of such damages, but, from the necessity of the case, leaves their assessment to the good sense and unbiased judgment of the jury." —*Aldrich v. Palmer,* 24 Cal. 513.

In this case there was no dispute as to the fact and extent of the plaintiff's injuries, and as the law can have "no fixed measure of compensation for the pain and anguish of body and mind, or the permanent injury to health or body" (Sedgwick on Damages, vol. 2, § 481, and authorities cited), we are of the opinion that, when the above excerpt is given a fair interpretation and is considered in connection with the evidence, the conclusion is irresistible that it simply meant that the jury, in determining the amount of the plaintiff's compensatory damages, should fix an amount which, in their dispassionate judgment, under all the facts and circumstances, would compensate the plaintiff for the loss

which he had sustained, and that, if the jury were of the opinion, after considering all the evidence, that the plaintiff's injuries were due to the wanton negligence of the defendant's servants, then that they might, if they saw proper so to do, add such reasonable sum as in their judgment would sufficiently punish the defendant.

For these reasons, we are of opinion that the above excerpt from the charge of the court is free from error.

In addition to the above, we direct attention to the fact that the excerpt now under consideration was excepted to by the defendant as a whole. The first part of the excerpt—that part contained in the first two sentences—is, we think, not only a clear statement of the law, but is not subject to the hypercriticism of a skilled dialectician, and the proposition is familiar that, when an exception is taken to a charge of a court on a given subject as a whole and the charge so excepted to is good in part and bad in part, the exception fails.

(4) Many exceptions were reserved to the action of the trial court in permitting evidence to go to the jury tending to show that Atlanta avenue, at the point where the injury occurred, was in a populous section and was, at that point, a much traveled thoroughfare. That rate of speed which, in a sparsely settled neighborhood of a town and upon an infrequently used street in such neighborhood, would be a reasonable rate of speed, in a thickly settled neighborhood and upon a much used street, might amount to a reckless and dangerous rate of speed, and upon the question of wanton injury we think the above testimony was certainly admissible and relevant.

(5) This case has received a careful consideration at the hands of each member of this court, and we have above alluded to every question presented by this rec-

ord which, in the opinion of any member of this court, deserves consideration. There seems to have been a fair and impartial trial of this case in the court below. The jury, under the disputed issues of fact, returned a verdict in favor of the plaintiff for $10,000. There was a judgment following the verdict, and, as we find no error in the record, we are of the opinion that the judgment of the court below should be affirmed.

Affirmed.

MAYFIELD, J., is of the opinion that the trial court committed reversible error in that part of its oral charge to the jury quoted by us in subdivision "a" of section 3 of the above opinion, in that said quoted portion was, in fact, a charge upon the effect of the evidence.

MAYFIELD and SAYRE, JJ., are of the opinion that the trial court placed too high a degree of care upon the motorman in those portions of its oral charge made the basis of assignments of error 40 and 32 and referred to by us in subdivision "b" of section 3 of the above opinion, and for that reason committed reversible error.

ANDERSON and MAYFIELD, JJ., are of the opinion that the trial court committed reversible error in that portion of the oral charge of the court quoted by us in subdivision "d" of section 3 of the above opinion, in that the trial court, in said portions of the oral charge, erroneously stated the manner in which the plaintiff's damages should be estimated.

ON APPLICATION FOR REHEARING.

DE GRAFFENRIED, J.—The above opinion shows on its face that this case has received, at the hands of each member of this court, the utmost consideration.

The opinion was written *after* the case had been fully considered by the whole court and the legal questions which the court felt deserved discussion had been fully determined by the court.

(1) When an opinion is handed down by an appellate court, it should, so far as possible, be so worded that no doubt can be enterained as to the meaning of the court. It should, if possible, be so expressed as that he "who runs may read." General statements of undisputed facts are frequently indulged in, not for the information of the parties who already *know* the facts, but for the information of the stranger to the cause in order that he, upon reading the opinion, may be clearly informed as to what the court did in fact decide. Counsel for appellant, in briefs filed by them on this application for a rehearing, call attention to certain immaterial inaccuracies in the general statement of the facts contained in the above opinion as to the width of a street, points of the compass, etc. (these inaccuracies have been corrected to meet the exactitude desired by counsel) ; but those general statements had nothing to do with the law of this particular case. It does not matter, so far as the material facts of this case are concerned, whether the street on which the child received his injuries was 80 or 85 feet wide, or whether the street car line was east or south of the church.

(2) That which is law as applied to the facts of one case may not be the law as applied to the facts of some other case. In this case it is earnestly insisted that the following portion of the oral charge of the court, viz.: "If you are reasonably satisfied from the evidence in this case that on the 28th day of March, 1909, the plaintiff was on the track or on the side of the track of the defendant and in dangerous proximity thereto on Atlanta avenue in the corporate limits of the city of Shef-

field, Ala., and that his acts indicated a purpose to cross said track, and defendant's motorman in charge of said car saw him thus on the track or in dangerous proximity thereto, and that the motorman in charge of the car purposely and consciously failed to use the means at hand to prevent the injury, and which means, if taken, would have prevented the injury, then I charge you that this would be wanton negligence on the part of the motorman that would entitle the plaintiff to recover"—is erroneous in that the court left out of said charge the *essential* element of the *consciousness* on the part of the motorman that his "conscious failure to use the means at hand to prevent the injury" *would probably eventuate in injury.* In other words, that for the motorman to have been guilty of wanton injury he must not only have *consciously* failed to use the means at hand to prevent the injury, but that he must, when he did so, have been conscious of the fact that his failure to so use the means at hand would probably result in injury. Undoubtedly as a general proposition the legal principle contended for by appellant is correct.—*Anniston Electric & Gas Company v. Rosen,* 159 Ala. 195, 48 South. 798, 133 Am. St. Rep. 32.

Under the facts of the instant case the trial court cannot, however, be put in error on account of the claimed defect in the charge. The motorman is the servant of the appellant to whose acts the plaintiff's injuries were due, and the motorman testified to the following: *"I did not apply all the air as soon as I saw the child start towards the track. I thought he had a chance to get across, and then I thought he might stop after he started."* We have adverted to the tender age of the plaintiff; and the heedlessness, trustfulness, and helplessness of children of the tender age of the plaintiff are proverbial. The motorman saw the child and from

his acts saw that he was proceeding to a place of danger, and, according to his own testimony, instead of taking measures to prevent the injury, *took the chances.* The motorman knew that his car would kill or seriously injure the child if it struck him. He knew that the child was going in the direction of the track, and yet he did not apply *all* the air because he thought the child had a *chance* to get across the track, or thought that he *might stop* before getting upon the track. It seems to us that this admission of the motorman—and he was a witness for the defendant—showed, *as matter of law,* that the motorman, when he consciously failed to "apply all of the air," did so with the "consciousness that such failure to act on his part would probably eventuate in injury" to the plaintiff. His failure to "apply all of the air," under the circumstances shown by his admission, amounted to that reckless indifference to the rights of others which the law calls wantonness. If the plaintiff had been a person of discreet age instead of a child of extremely tender years, the motorman's act might be differently construed.

MAYFIELD, J.—(dissenting).—I cannot concur in the affirmance of this judgment. I think it was a case in which the jury might probably have rendered a verdict against the defendant; but I do not think it was a case under the issues and the evidence, in which the trial court could, as he did in this case, direct a verdict for plaintiff. I think it was a case for the jury to say whether or not either of the issues was proven.

I do not mean to say that the trial court did in form direct the verdict, but it did so, in effect, more than once. If the trial court said to the jury, in its charges, what the record recites it did, the verdict was in effect directed several times. It is very true that the court

did, in terms and in form, say to the jury that it was a question for the jury and not for the court, and it declined to give the affirmative instruction in form, but, nevertheless, gave it in effect.

I do not mean to intimate that the trial court so intended the effect of its charge, but, on the contrary, that it intended the effect to be what it was in form, and what it ought to have been, to warrant the submission of the disputed questions of fact to the jury for determination.

I also know that my Brothers have the same opinion as to the effect of the charge of the trial court, which that court had of it; but I think they err in their judgment, and I shall attempt to state the reason for my dissent.

There were but two issues in this case: First, did the defendant's servants or agents, acting within the line and scope of their employment, negligently run the car over the plaintiff? Second, did they wantonly or willfully run the car over the plaintiff?

There were no pleas of contributory negligence, or of assumption of risk, or any other pleas of confession and avoidance. The issues were thus few, simple, and clearcut.

There was no dispute in the evidence that a street car of the defendant ran over the plaintiff's feet and legs, and thus maimed him and made a cripple of him for life. The injuries were unquestionably serious and permanent.

The defendant claimed—and its evidence, standing alone, unquestionably established the fact—that the injury was not inflicted by its agents or servants, either negligently, wantonly, or willfully, or in any other mode or manner; but that the injury was the result of an inevitable accident, and was due solely to the un-

alterable laws of nature; and that its agents and serv-
ants, not only did not cause the injury, but that no
human power or foresight could, under the circum-
stances, have prevented the injury.

I concede that the plaintiff had some evidence which
made this question, under our practice, one for the jury;
yet, if the unerring truth could speak, it would pro-
claim the catastrophe an unavoidable accident.

The real and only disputed and concrete question was
whether the injury was inflicted by the defendant's mo-
torman negligently or willfully, or whether it was an
inevitable and unavoidable accident.

If the evidence of the motorman was true—and he
had the best opportunity of knowing the facts—the in-
jury, accident, and result was unavoidable; no human
agency in control of the car could have prevented the
result. He denies emphatically that he or any other
agent or servant inflicted the injury.

Notwithstanding these issues and this evidence, the
trial court, among other things, charged the jury as
follows: "It is admitted that the plaintiff was injur-
ed by the agents and servants of defendant." If so, then
this was an end of this case, except as to the question
whether the injury was negligently, wantonly, or will-
fully inflicted, and the question of the amount of the
damages. This charge, in effect, directed a verdict for
plaintiff. The formal affirmative charge, with the usual
hypothesis, would not be as effective to produce a ver-
dict for the plaintiff as this charge; for the reason that
the formal charge requires that the jury must "believe
the evidence," while the charge given says in effect that
it is admitted that the plaintiff is entitled to recover,
and that the only question for the jury to determine
is whether the wrong was done negligently or wanton-
ly, together with the question of the amount of damages.

That the jury so understood this charge is made clear to my mind by what was shown on the application for a new trial. It was there made to appear that the only question which troubled the jury was whether they could find for the plaintiff on one count only, or whether they should find for him under both, or whether they had to say, by their verdict, on which count they found for the plaintiff.

To test the effect of this charge, suppose the defendant had filed only one plea, and that plea had followed the charge as far as practical; what would have been the legal effect of the plea? The plaintiff would have been entitled to a judgment by confession upon this plea. If so, was the charge less effective?

The majority opinion answers this by saying: Yes, but the court in other parts of its charge charged the law correctly, and we will not reverse as for this part of the charge; the other parts explained this part so as to cure it of error. But the reply to this answer is that the statutes of this state expressly authorize a defendant to plead several inconsistent pleas; whereas, there is no statute authorizing the court to give several inconsistent charges.

To show that the majority of my Brothers are wrong in their conclusion, let us suppose that the court had not only charged the law correctly in other parts of the charge, but, immediately after the charge complained of, had directed a verdict for the defendant; and the jury, following the first instruction, had found for the *plaintiff*: Could it be said that the error was without injury, or that it was cured by the last charge in favor of the defendant? Surely not. If this is true, then how can it be said that this charge, or this part of the main charge, or other parts hereinafter complained of, were without injury to the defendant?

With all due deference to the opinion of my Brothers, if this charge, or this part of the main charge of the court, was not a charge upon the effect of the evidence, in violation of the mandate of the statute, then I confess I am at a loss to know what is necessary to constitute a violation of that statute.

The above is what appears to me to be the effect of the charge as a matter of law. Let us now examine it as a matter of fact. I do not think that it is shown by the record, which purports to contain all the pleadings and all the evidence, that it was admitted that the defendant's agents and servants inflicted the injury complained of. If this be true, then it must be admitted that every injury to a child of very tender years, by a street car's striking it, is caused by the agents or servants of the street car company. I do not believe that this follows either as a matter of fact or matter of law.

Suppose that a child is standing behind a tree, close to an approaching street car, or on a fence or a porch near an approaching car, and that suddenly and without warning he jumps in front of the moving car and is injured by the car's striking him: Can it be truthfully said that the motorman or the conductor inflicted or caused the injuries? I think not. Suppose that a child hides under a trestle or in an open culvert and, as the car is passing over him, protrudes his head in the way of the passing car, and is killed by contact therewith, the agents or servants in charge of the car knowing nothing of his presence, or of the injury: Is it possible that they inflicted or caused the injury?

Now, let me put the exact case presented by this record, according to the person best situated to know the facts, if he spoke the truth; and as to whether he did or did not was certainly a question for the jury. He (the motorman) said: "I was keeping a lookout in

front of me, to see if there was anything or anybody crossing the street that would be in my way at all. There was not any one in the street at all until I got to Fourth street, and when I got there two little boys were standing on the left of the car track or the east side—I suppose it was about 10 or 12 feet from the track—and then one of the little boys came out from the corner of the church and ran across where the other little boys were. Then I looked away to see about the other children coming out of the church, looking to see if any of them were crossing the track. As I glanced back, the little fellow had started back across the street, right in front of my car, about 6 or 7 feet from the car when I saw him. The children were on the east side of the track, about 10 or 12 feet from the east rail and standing near the corner of Mr. Hyde's residence. The little boy that got hurt came across the track from towards the church. He went to where the two little boys were standing. He went about 10 or 12 feet east of the track before he turned back. My car was then about even with the north sidewalk of Fourth street. I thought the little fellow was safe, and I glanced across to the church to see about the other children coming out of the church. When I looked at him again he was within 6 or 7 feet of the car going in the same direction he came from. He was running as fast as he could. I applied my brakes as soon as I could, and when I saw that was not going to save him I reversed my current; but by the time I could apply my brakes the car had struck him, and the motion of the car carried it over him." Further on, he says: "I would not have hurt that child for anything in this world. I am sure I did everything in my power to stop that car."

Does this evidence justify the court in charging, as it did charge, that it is admitted that the plaintiff was in-

jured by the agents and servants of the defendant? How
can an agency inflict an injury which that agency could
not prevent or even anticipate? Is it good English,
good logic, good morals or good law, to say that I
inflicted an injury because I could not have prevented
it? If I own a millpond, or a field, and a child under
seven years of age is drowned in that pond, or kills itself
by running against a stump in that field, did I cause
the death, for no other reason than that I owned or
controlled the millpond or the field? Surely not. That
is what this charge in legal effect, under the pleading
and proof in this case, in my judgment, asserts. In
my humble judgment it is wrong in fact, in morals, and
in law.

The court, among other things, charged the jury that
the motorman "should keep his car so far under proper
control as to avoid injury to persons on foot or in vehi-
cles," and, further on, leaving the abstract propositions
as to the duty of motorman, and coming to the concrete
case, said: "The motorman should have had the means
at his command by the exercise of reasonable care and
skill to stop the car upon the appearance of danger to
the plaintiff."

I submit candidly that if these charges, or parts of
the main charge, in the case, state the law, then it is a
physical and legal impossibility for street cars to run
upon or across the public highways, without being lia-
ble in damages for every injury inflicted by the collision
of a moving car, with "persons on foot or in vehicles."
Of course, I know my Brothers never intended to de-
cide this, and are not conscious of the fact that they
have decided; but I submit that a close and careful
study of this record, and of the charge of the trial court,
such as I have bestowed upon it, will convince the trial

court and my Brothers that such is the effect of those portions of the oral charge of the court.

The trial court likewise erred to the prejudice of the defendant, in its charge to the jury as to how they should ascertain the amount of compensatory damages which plaintiff might recover. How is it possible for a court to charge a jury in a case like this, and as the majority opinion vividly pictures it, that in fixing the amount of damages they may consult their experience and award such amount as in their discretion they deem fair? Does the amount of compensation to which a plaintiff is entitled for a given injury depend upon the personal experience of the individual jurors awarding it, and does the amount rest in their discretion?

While, of course, the amount is not liquidated and cannot be made certain except by the verdict of the jury, and the jurors are called for the purpose of ascertaining the amount and thus making it certain, liquidating it, yet they must be guided in this matter by the evidence, and not by their experience and discretion. This court has said that it is error to charge the jury that the amount of punitive damages rests solely within the unbridled discretion of the jury; yet punitive damages does rest largely, of necessity, in the discretion of the jury, because it does not at all depend upon the extent or severity of the injury, as does compensatory damages, but is intended only as a punishment and is to be fixed by the jury.

I cannot agree with the majority in holding that the giving of an erroneous charge or instruction to a jury is cured by the court's giving (before or afterwards) a correct charge, whether they both be in the same sentence or in different sentences. How can this court know that the jury did not obey the bad charge and disregard the correct one? The jury cannot obey or regard

both if they are diametrically opposed, as in this case, one in accordance with the law, and the other opposed thereto. Is there not a strong presumption that they obeyed the bad charge, and disregarded the good one, when they found a verdict as directed by the bad charge?

I make this last statement for the reason that the trial court did, in the main charge (as to part of which I am complaining), instruct the jury fully and correctly upon all the questions discussed by me; but the court did not stop at this, it repeated and repeated, and in the instances which I have pointed out (and in others, not indicated) it charged the law incorrectly, even to the extent of charging the defendant out of the court and, in effect though not in terms, directing the jury to find a verdict for the plaintiff.

In order to test the correctness and propriety of the rule announced in this case, as to reviewing rulings of trial courts upon exceptions to the main charge—remembering the other rules of construction that enough of the charge must be set out to show the sense and meaning in which the instruction complained of was used, and that the court cannot, in the main charge, instruct upon the effect of the evidence, because the statute prohibits it—suppose the trial court correctly and fully charges the jury upon all phases of the evidence and upon all the issues (as was done in this case), and then concludes his charge in the following sentence: "This is a case in which the jury, and not the court must determine who is entitled to a verdict; but the court charges you that the plaintiff ought to have a verdict and that the defendant, also, is entitled to a verdict."

Under the rule declared by the majority in this case, no possible exception can be taken to this charge, or part of the main charge, which will work a reversal. If

the exception is to the whole quoted sentence, the court will say: We can divide that sentence into three, and one or the other will of necessity be correct in every case, or it will be in favor of the party excepting, and of which he complains. If he segregates the part to which he excepts from its context with the other parts of the sentence in which it is used, and therefore shows it to be bad, the appellate court, of course, cannot know whether the part excepted to was good or bad. Its context might show that the part excepted to was perfectly correct and proper.

If the rule applied in this case is to be used in connection with the other rules heretofore announced and applied, as to exceptions to parts of the main charge, then, I submit, it is impracticable, if not impossible, to reverse a trial court as to improper instructions to the jury, where the improper instruction is used in the same connection and in the same sentence with a correct proposition.