(87 South. 608)

## ALABAMA POWER CO. v. BROWN.
(8 Div. 244.)

(Supreme Court of Alabama. Dec. 2, 1920. Rehearing Denied Jan. 6, 1921.)

1. Appeal and error ⬤➡1047(3)—Failure to strike out evidence harmless where similar evidence subsequently admitted.

In automobilist's action against street car company for collision with street car, the overruling of defendant's motion to exclude the motorman's declaration, testified to by plaintiff, that he, the motorman, did not see plaintiff coming, as he was watching a car on the opposite side, if error, was rendered innocuous by subsequent testimony of the motorman: "I did not see her when she ran into the car. When I first seen her she was coming directly south. I was looking at another automobile going north."

2. Evidence ⬤➡490—Opinion as to whether automobile could turn in certain space held inadmissible.

It was proper not to permit a witness not shown to have had any automobile driving experience to testify whether an automobile coming up a cross street could turn in the space between a street car track and the curb; it being a question about which the jury could judge as well as the witness.

3. Negligence ⬤➡100—Contributory negligence no bar to recovery for wanton injury.

While plaintiff's negligence bars recovery for simple initial negligence, it does not bar recovery for wanton or willful injury.

4. Street railroads ⬤➡117(36)—Wanton injury to automobile held for jury.

In automobilist's action against street car company for collision with street car, the case held one for the jury on a count for wanton injury; there being evidence that the motorman ran the street car at a dangerous rate of speed and without warning signals at the point of collision, a street intersection where he knew or should have known there was constant travel across the track.

---

⬤➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**5. Street railroads ⟨key⟩117(7)—Negligent speed question of fact.**

While speed of a street car is not in and of itself negligence as a matter of law, it may be negligence as a matter of fact, depending on the rate of speed and the conditions under which it is maintained.

**6. Trial ⟨key⟩253(4)—Instructions ignoring issues properly refused.**

In automobilist's action against street car company for collision with street car, requested charges ignoring the issues presented by the wanton count of the complaint *held* properly refused.

Sayre and Somerville, JJ., dissenting.

Appeal from Circuit Court, Madison County; Robt. C. Brickell, Judge.

- Action by Eva Brown against the Alabama Power Company for damages for injuries to person and property in a collision between a street car and automobile. Judgment for plaintiff, and defendant appeals. Transferred from Court of Appeals under section 6, Acts 1911, p. 449. Affirmed.

The first count to the complaint is in simple negligence, as is the second. The third count is for wanton or willful injury alleged to have been inflicted by the servants or agents of the defendant in charge or control of the street car while acting within the line and scope of their employment. This complaint was afterwards amended by showing that the street car track was imbedded in and formed a part of the public street.

The following charges were refused to the defendant:

(5) Under the evidence in this case, I charge you that no speed of the street car at the time and place of the collision was in and of itself negligence.

(7) If you believe from the evidence that plaintiff and the motorman were equally at fault in producing or causing the damage and injury complained of, then your verdict must be for the defendant.

(8) Both the plaintiff and the motorman were required to use reasonable care in approaching the crossing and in crossing at the intersection of the street, and if you believe from the evidence that the motorman was not using due care, and that the plaintiff carelessly ran her car at so high a rate of speed as to prevent her from running into a street car at the crossing, then your verdict must be for the defendant.

(10) There is no evidence in this case showing that the personal injuries received by the plaintiff were proximately caused by the street car striking the automobile.

(11) If you believe from the evidence that the plaintiff's automobile ran into the side of the street car towards the front of the car, your verdict must be for the defendant.

(12) If you find for the plaintiff, you cannot (if you believe the evidence) award her any damages except such as would compensate her for damage done to the automobile.

(13) Under the evidence, if you find for the plaintiff, you cannot award her damages exceeding $79 with 8 per cent. interest from the date of the collision between the street car and the automobile.

Spragins & Speake, of Huntsville, and Thomas W. Martin, W. M. Hood, and P. W. Turner, all of Birmingham, for appellant.

Court erred in permitting plaintiff to testify as to what the motorman said to her. 84 Ala. 149, 4 South. 618; 85 Ala. 352, 5 South. 79. Defendant was entitled to charge 5. 85 Ala. 352, 5 South. 79. The evidence did not warrant the submission of the wanton count to the jury. 16 Ala. App. 629, 80 South. 693; 198 Ala. 630, 73 South. 950. It does not appear that the collision caused the injuries. 196 Ala. 52, 71 South. 685; 197 Ala. 473, 73 South. 33; 202 Ala. 252, 80 South. 90.

Hill, Hill, Whiting & Thomas, of Montgomery, and Taylor & Watts, of Huntsville, for appellee.

Any error in admitting the evidence complained of was rendered harmless by defendant introducing the same evidence. The rule of "stop, look, and listen" does not apply. 174 Ala. 657, 56 South. 1013. The court properly submitted the wanton count to the jury. 144 Ala. 610, 38 South. 857; 183 Ala. 357, 61 South. 88; 16 Ala. App. 629, 80 South. 693. Counsel discuss the refused charges, but without further citation of authority.

BROWN, J. [1] The overruling of the defendant's motion to exclude the declarations of the motorman, "I didn't see you coming; I was watching a car on the opposite side," testified to by the plaintiff, if error, was rendered innocuous by the testimony of the motorman subsequently given relative to the collision, in which he said:

"I did not see her when she ran into the car. When I first seen [saw] her she was coming directly south. I was looking at another automobile going north and was looking for that automobile to run into me, and when I turned to look to the left again she had hit me."

[2] Before the witness Ward was examined it had been shown there was a space of 16½ feet between the curb on Holmes street and the street car track, and it was not shown that the witness had had any experience in driving an automobile, and the jury could judge as well as the witness whether an automobile coming up Green street could turn in the space between the street car track and the curb on Holmes street. Therefore the objection to the question made the basis of the fifth assignment of error was properly sustained.

The appellant insists that the undisputed facts show that plaintiff was guilty of negli-

gence which proximately contributed to her alleged injury, and that there is no evidence of wantonness on the part of the defendant's motorman, and therefore the affirmative charge requested by it should have been given.

[3] Though it be conceded that the plaintiff was guilty of contributory negligence, which would bar a recovery for simple initial negligence, yet, if there was evidence tending to sustain the wanton count, this contention of appellant is without merit.

There is evidence tending to show that the injury of which plaintiff here complains resulted from a collision between the defendant's street car and the plaintiff's automobile at the intersection of Holmes and Green streets in the city of Huntsville, on the afternoon of April 12, 1919, at which point defendant's car tracks were embedded in and formed a part of Holmes street. The street car was going east on Holmes street, and the plaintiff was driving a Ford automobile in a southerly direction on Green street. There was a building on the corner, west of Green street and north of Holmes street, that obstructed the view of the motorman as he approached Green street, and likewise obstructed the view of plaintiff as she approached Holmes street. The streets, exclusive of the sidewalks, were 39 feet wide, and the space between the curb and the car track on Holmes street was 16½ feet on either side.

The evidence as to the speed of the street car as it approached Green street and as to whether signals of warning were given was conflicting. One witness, offered by the plaintiff, testified that the street car as it crossed Green street was running at the rate of 15 miles an hour; and the plaintiff testified it was going twice as fast as it usually crossed this street. The plaintiff and her companion testified that they listened for cars and heard no signal of approach. The testimony offered by the defendant tended to show that the car slowed down as it approached the crossing, and was moving at the rate of from 3 to 6 miles per hour. The motorman testified that he began to sound the gong when within a half a block of the crossing, and sounded it continuously until the accident occurred. Another witness testified the gong was not sounded until about the time the car reached Green street. Evidence was offered showing that the city of Huntsville had a population of 10,000 at the time of the accident, and that this crossing was located at a populous portion of the city, and the fact that the crossing was much frequented does not seem to have been controverted. One of plaintiff's witnesses testified:

"Cars are passing across these two streets all the time, from both ways. Green street is not as populous a thoroughfare as Holmes street; Holmes street being a very popular one. Green street leads out to the new market pike; there are vehicles and pedestrians all the time crossing there from the country, of course, but not as much as on Holmes street. At the intersection of the two streets there are passengers in large quantities, and this is an unguarded crossing and no flagman is there."

Another witness offered by the plaintiff testified:

"I know the location and position of these streets; there is a good deal of traffic crossing on Holmes street; it is continuous all the time you might say."

No evidence was offered by the defendant to controvert these facts; but, on the contrary, the defendant's evidence, showed that it maintained a "slow up" sign at this crossing as a warning to the motorman, and that the motorman had continuously for four months or more operated one of defendant's cars on this line and over this crossing.

In more than one of our cases it has been declared:

"To run a train at a high rate of speed and without signals of approach, where the trainmen have reason to believe there are persons in exposed positions on the track, as over an unguarded crossing in a populous district of a city, or where the public are wont to pass on the track with such frequency and in such numbers—facts known to those in charge of the train—as that they will be held to a knowledge of the probable consequences of maintaining greater speed without warning, so as to impute to them reckless indifference in respect thereto, would render the employer liable for injuries resulting therefrom, notwithstanding there was negligence on the part of those injured and no fault on the part of the servants after seeing the danger." A. G. S. R. Co. v. Guest, 144 Ala. 373, 39 South. 654.

The same principle has been applied to street railways. In Birmingham Ry., Lt. & Power Co. v. Strickland, 192 Ala. 596, 68 South. 911, it is said:

"The decisive question on this appeal is whether the evidence justified the submission of the case to the jury on the issue of wanton injury, as charged in the second count of the complaint. If defendant is liable under this count, it is because one of its servants on this car saw deceased in imminent danger and omitted to do something which he might have done to prevent or mitigate his injury, knowing that the injury would probably result from such omission, or else because such servant ran the car at a dangerous rate of speed, and without warning signals, at a point where he knew, or ought to have known, that some persons would probably be crossing the track, and would be thereby exposed to injury by such operation of the car"—citing Anniston E. & G. Co. v. Rosen, 159 Ala. 195, 206, 48 South. 798, 133 Am. St. Rep. 32; Sheffield Co. v. Harris, 183 Ala. 357, 61 South. 88; B. R., L. & P. Co. r. Drennen, 175 Ala. 338, 57 South. 876, Ann. Cas. 1914C, 1037.

[4] Under the authorities and in view of the evidence stated, we hold that the case

was one for the jury on the wanton count, and the affirmative charge on the whole case, as well as the affirmative charge requested as to count 3, were properly refused.

[5] Charge 5 was invasive of the province of the jury. While speed in and of itself is not negligence as a matter of law, it may be negligence as a matter of fact depending upon the rate of speed and the conditions under which it is maintained. Cent. of Ga. Ry. Co. v. Faust, 17 Ala. App. 96, 82 South. 36; E. T., V. & G. R. Co. v. Deaver, 79 Ala. 220.

"It is also a familiar proposition that a rate of speed which a street car may, with perfect safety, maintain at a given point on a street at one time, may at another time amount to that reckless indifference to the rights of others as to amount to wantonness." Sheffield Co. v. Harris, supra.

[6] Charges 7, 8, and 11 ignore the issues presented by the wanton count, and they were properly refused.

Under the evidence we think it was a question for the jury as to whether the plaintiff's personal injuries were suffered as the result of the collision between the automobile and the street car, and charges 10, 12, and 13 were properly refused.

Finding no reversible error in the record, the judgment of the circuit court will be affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN, GARDNER, and THOMAS, JJ., concur. SAYRE and SOMERVILLE, JJ., dissent.