48 So.2d 172

BIRMINGHAM ELECTRIC CO.
v. HARDMAN.

6 Div. 905.

Supreme Court of Alabama.

Oct. 19, 1950.

Lange, Simpson, Robinson & Somerville, of Birmingham, for appellant.

Taylor, Higgins, Windham & Perdue, of Birmingham, for appellee.

BROWN, Justice.

The appeal in this case is from a judgment of the circuit court in an action of trespass on the case by a pedestrian against the appellant, Birmingham Electric Company, awarding the plaintiff damages for personal injuries inflicted on him by one of the defendant's motor busses operated across the intersection of 6th Avenue and 19th Street in the City of Birmingham.

The complaint consists of two counts. Count 1 ascribes the plaintiff's injuries to the negligence of a servant, agent or employee of the defendant acting within the line and scope of his employment in running said motor bus of the defendant against the plaintiff, inflicting upon him the following alleged injuries: "His head, back, abdomen, legs, arms, feet, ankles and other parts of his body were bruised, contused, lacerated, sprained, strained, fractured, broken and injured; he was internally injured and permanently injured; his nervous system was greatly shocked and impaired and permanently shocked and impaired; he was caused to become crippled; his physical

stamina was greatly reduced and impaired, and plaintiff's nervous system was greatly shocked and impaired and was permanently shocked and impaired, and plaintiff was put to much trouble, annoyance, inconvenience, great loss of time, and great expenses in and about procuring doctors and medicines, and medical aid and attention in and about an effort to heal and cure his said wounds and injuries."

The second count ascribes said injuries to the acts of said servant or agent while acting within the line and scope of his employment in "wantonly running said motor bus of defendant against the plaintiff and as a proximate consequence of said wanton conduct plaintiff avers that he was caused to sustain and did sustain the injuries and damages complained of and set out in Count 1 of this complaint."

After demurrer of the defendant to said complaint was overruled, it pleaded in short by consent, the general issue with leave to give in evidence any matter which if well pleaded would be admissible in defense of the action and with leave of plaintiff to give in evidence any matter which if well pleaded would be admissible in reply to such defenses made. The trial resulted in a jury verdict for the plaintiff, assessing the damages at $10,000 upon which said judgment was entered.

The evidence shows that the collision of the street car with the plaintiff occurred around noon on the 15th of January, 1947, on the intersection of 19th Street and 6th Avenue in Birmingham. That said intersection is a populous crossing constantly used at that hour by both vehicles and pedestrians in great numbers, which was known to the motorman operating the bus. That there was an automatic traffic light suspended at the center of the intersection; that 19th Street is 70 feet wide and that 6th Avenue is 50 feet wide. That across both of said streets the path of travel for pedestrians is clearly marked and that the plaintiff was in the act of crossing 6th Avenue and was within 12 or 15 feet of the curb on the south side of 6th Avenue when he was hit by the bus and approximately 38 feet from the north curb of 6th Avenue. That he was knocked down in the street, the front wheel of the bus passing over some part of his body and when the bus stopped, the rear wheel on the right hand side of the bus was on one of the plaintiff's feet and that it was within a few inches of his crotch. That he was unconscious and remained so for from 48 to 75 hours. After he was removed to the hospital x-rays were taken of the injuries to his foot and leg which were offered in evidence. The evidence further showed that he had a severe injury to his brain; that his left foot was severely crushed and the femur in the left leg was broken.

The evidence is in conflict as to whether the plaintiff was crossing from the north side of 6th Avenue or the south side when he was hit by the bus. But it is without dispute that he was within the walkway in line with the sidewalk on 19th Street when the bus hit him. Visibility was good and there was nothing to prevent the driver of the bus from seeing a person walking along the avenue in said walkway.

The evidence goes to show that the bus stopped on the west side of 19th Street to discharge passengers and then proceeded to cross the intersection without giving any alarm or warning and was moving forward at the rate of from 12 to 20 miles per hour across the intersection. There was some evidence tending to show that at the time plaintiff started across the Avenue the green light was showing and indicated that the traffic could move along 19th Street across 6th Avenue. There was also evidence tending to show that while the bus was in the street intersection passing the light it turned red against traffic on 6th Avenue. As to these matters the evidence was in sharp conflict. The driver of the bus testified that he was looking ahead, that he had no knowledge of the plaintiff's presence on the Avenue until the bus hit him, that he felt the jar and applied the brakes and stopped the bus within less than its length, which was 35 feet. When the bus came to a stop the front end of the bus was about halfway across the walkway in line with the sidewalk on 19th Street, said walkway being definitely marked by 7—Up copper disks. Appellant in brief, referring to the testimony of the motorman on cross-examina-

tion states that "he testified that he judged that the right hand corner of the bus was about four steps from the right hand curb, about 12 feet in his judgment; that the right hand corner of the bus would be about 12 steps from the left hand curb, something like 36 or 38 feet, and about 12 feet from the right hand curb; that he did not see any other traffic other than the automobile which went ahead of him, and no other pedestrian; that he was keeping a lookout ahead; that there was not anything in the street to obstruct his view of a pedestrian that might have been walking from the north curb in the cross-walk, and nothing to obstruct his view of a pedestrian who might be standing on the north curb as the bus came across the intersection; that he could not tell which way the plaintiff came from; that he never saw him, that he just felt the bump; that he did not see how the right front wheel of the bus could have run over plaintiff, if it did, that he saw plaintiff in the street after the accident, that plaintiff could not have been knocked or moved over three or four feet by the bus; that in his best judgment plaintiff was in the cross-walk when he was struck, near the east side of the 7—Up markers; that blood was running from his head; that the street was dry; that he could have stopped the bus in 10 or 12 feet after proper application of brakes; that he did not put the brakes on until after hitting plaintiff; that he was on time at the time; that he had run busses for several months on that same route and had passed back and forth through that place; that he was familiar with traffic conditions at that time of the day on that corner; that it is a very heavily traveled corner, with automobiles, busses and street cars, and was so at the time, all of which he knew before the accident happened; that a great number of pedestrians at that time used the cross-walks back and forth, which he knew; that he could not say what part of the bus hit the plaintiff; that before the accident he did not give any signal or warning; * * *."

Dr. Mason, who attended plaintiff, after giving testimony to show educational qualifications and experience, testified: "A. He had a head injury, and he had a fracture of his left fema, left front leg; fracture of his left foot. He had a laceration of his scalp, and he had numerous abrasions about his face, arms and legs.

"Q. Doctor, at that time, did you form an opinion as to whether or not he had a fracture of the skull? A. He had an injury in keeping with that.

"Q. What do you mean by 'an injury in keeping with that', Doctor? A. He had an injury to his brain which we couldn't tell clinically whether he had a fracture of the skull or not. There was no compound fracture in which you could see the bone fragments, or any displaced fracture in which you could feel it.

"Q. It was your opinion he had a fracture, but not one of the compound fractures you could actually see? A. That's right.

"Q. And I believe you said he was unconscious at that time? A. Yes, sir.

"Q. Doctor, do you sometime speak of the condition he was in as having a cerebral injury? A. Cerebral means brain, and an injury to his brain would be a cerebral injury.

"Q. Was that a mild injury or severe? A. In keeping with his unconsciousness we thought that was a severe brain injury.

"Q. Doctor, how long did he remain unconscious there, approximately? The same degree of unconsciousness as he was in when you first saw him; how long did he remain that way? A. I would have to look at the records to be accurate, but two or three days, about that length of time; 48 or 72 hours."

The points first argued in brief of appellant go to the credibility of some of plaintiff's witnesses, stressing the "suspicious circumstances surrounding and touching" such testimony, tending to impeach the same on the theory that they did not witness the catastrophe, and challenge the integrity of the jury's verdict as being against the great weight of the evidence. The credibility of the testimony of these witnesses was for the jury. The motion for new trial was overruled by the trial court, who with the jury heard the evidence, and after due consideration we are not able to affirm

that the ruling of the court in the light of the record was erroneous. Birmingham Electric Co. v. Lawson, 239 Ala. 236, 194 So. 659; Sorsby v. Wilkerson et al., 206 Ala. 190, 89 So. 657.

■ The imputation of one counsel for plaintiff against adversary counsel during cross–examination of one of plaintiff's witnesses that he was "trying to misinterpret the testimony of the witness," does not fall within the principles of law announced in Birmingham Railway, Light & Power Co. v. Drennen, 175 Ala. 338, 57 So. 876. The only ruling invoked and made by the court was, "I will overrule the objection. The jurors have heard all the witnesses' testimony; it is for them to say." The insistence that this was ground for new trial is without merit.

■ The appellant next insists that the court erred in refusing to give the affirmative charge with hypothesis requested by it in writing as to the wanton count of the complaint. The circumstances stated which find support in the evidence as to the character of the intersection at 19th Street and 6th Avenue on which plaintiff was injured and its constant use by the public at the hour of the injury, showing that it was a "populous crossing," the knowledge of the motorman of that fact and the public use thereof and the other circumstances in evidence, supplied the element of knowledge, if believed by the jury, to warrant the court in refusing said charge. Dean v. Adams, 249 Ala. 319, 30 So.2d 903; Duke v. Gaines, 224 Ala. 519, 140 So. 600; Louisville & Nashville R. Co. v. Heidtmueller, 206 Ala. 29, 89 So. 191; Sheffield Co. v. Harris, 183 Ala. 357, 61 So. 88.

■ The evidence is without dispute that when the 8,000 pound bus struck plaintiff, the shock of the collision was felt by the motorman and the passengers and plaintiff was knocked unconscious to the surface of the paved street; that the bus ran over some part of his body, broke his left leg, crushed his foot, cracked his skull and inflicted on him cerebral shock and injury. While the medical testimony does not positively point out a specific injury to his back, it is a matter of common knowledge that the spinal cord, which embodies the major part of the nervous system, is housed in the backbone, connecting with the brain and the lower extremeties of the back. We are therefore of opinion that the question of whether or not plaintiff's back was injured, was for the jury.

■ Charge 7 hypothesized "if you believe the evidence in this case you can award the plaintiff no damages for the purpose of compensating him for his back having been fractured," is argumentative, does not state a correct proposition of law and invades the province of the jury. Charges which are not "expressed in the exact and appropriate language of the law" may be refused without error. Charge 9 hypothesized on the same premise relative to the injury to plaintiff's "right leg" is subject to the same defects. Birmingham Electric Co. v. Wood, 222 Ala. 103, 130 So. 786; International Harvester Co. v. Williams, 222 Ala. 589, 133 So. 270; Western Union Tel. Co. v. Griffith, 161 Ala. 241, 50 So. 91; Mackintosh & Co. v. Wells, 218 Ala. 260, 118 So. 276.

This disposes of all questions argued in brief and finding no error in the record, we are of opinion that the judgment of the circuit court is due to be affirmed. So ordered.

Affirmed.

FOSTER, LAWSON and STAKELY, JJ., concur.